**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**George E. TAYLOR, Jr.,**
**Defendant–Appellant.**

**No. 52568.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 5, 1988.

Marsha Brady, Almond, Williams & Brady, P.C., Hillsboro, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, L. Timothy Wilson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Appellant, George E. Taylor, was convicted after a jury trial of first degree robbery and armed criminal action. He was sentenced as a persistent offender to two concurrent terms of twenty years. Appellant challenges the conviction claiming that the trial court erred: (1) by prohibiting his defense counsel from asking during voir dire whether any of the veniremen would be prejudiced against the defendant because he lived with and was supported by a prostitute; (2) by allowing the state to read into evidence the preliminary hearing testimony of an unavailable witness since the state had not exercised due diligence in attempting to locate that witness; and (3) by allowing the state to improperly rehabilitate a witness by reading his police statement into evidence. We affirm.

The state's evidence was as follows: On April 30, 1985, appellant and his girlfriend, Barbara Randall, drove to a Derby gas station in Arnold, Missouri. Ms. Randall waited in the car while appellant approached the gas station armed with a handgun. The station was closed for the evening, and the attendant, Alan Baker, was locked inside counting money. Mr. Baker's wife and children were waiting for him in a car outside the station.

Appellant approached the Baker's car from behind and ordered Mrs. Baker and the children out of the car. He then instructed Mr. Baker to open the gas station door and ordered everyone inside. Appellant locked the Baker family in a storage closet, took the money, and fled with Ms. Randall. Appellant and Randall drove to the home of Dwayne McIntyre where they counted the money.

Five months later, Ms. Randall implicated appellant in the robbery. Appellant was subsequently charged with first degree robbery and armed criminal action.

In a pre-trial conference in chambers the trial court was advised that for some months before and after the robbery, appellant lived with and was supported by a state's witness, Barbara Randall, a prostitute. Appellant's counsel advanced the theory that Randall informed the police of appellant's complicity in the robbery out of spite after they separated. Because Randall had never been convicted of prostitution, the trial court admonished counsel that no mention of her occupation was to be made unless and until the relevance of her prostitution was established by, for example, evidence that a dispute over the division of the profits from her activities precipitated her giving information to the

police.[1] Nevertheless counsel requested the court to allow him to examine veniremen with the following questions:

(1) There will be testimony that the Defendant lived with Barbara Randall, one of the witnesses, and during that time she made her living as a prostitute. Would the fact that the Defendant lived with a woman while she was engaged in prostitution and allowed himself to benefit from the money she earned, would that fact by itself make you feel he probably committed the robbery he is charged with?

(2) There will be testimony that the Defendant shared in the profits of the "Touch of Class Escort Services," a prostitution business operated by the witness Barbara Randall. Would that fact in itself make you feel he probably committed the robbery he is accused of?

The trial court sustained the state's objections to these questions on the ground that they were irrelevant and prejudicial.

■ In his first point, appellant argues that he was entitled to a presumption of innocence, and that by denying him the right to examine the veniremen for bias and prejudice with the aforesaid questions, the trial court deprived him of his right to a fair trial. Appellant correctly contends that one purpose of voir dire is to expose juror bias or prejudice which could form the basis of a challenge for cause or be useful in utilizing peremptory challenges. *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983). However, both the defendant and the state are entitled to selection of a fair and impartial jury. *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo. banc 1979). "[While] questions on voir dire [which are] calculated to expose bias or prejudice should be liberally permitted, ... questions calculated to create prejudice should be vigorously denied." *State v. Reed,* 629 S.W.2d 424, 426 (Mo.App.1981). Controversy often arises when proposed jury questions have a "dual or ambivalent" character in that

"they may, arguably, tend to expose or create prejudice depending on the subjective viewpoint." *State v. Abbott,* 654 S.W. 2d 260, 275 (Mo.App.1983). The trial court, therefore, is given broad discretion in controlling voir dire especially concerning the nature, extent and propriety of questions addressed to veniremen. *Id.* at 274; *State v. Norton,* 681 S.W.2d 497 (Mo.App.1984).

■ Any relationship between the acceptance of the earnings of a prostitute and the commission of an armed robbery is, to say the least, tenuous. We believe the trial court accurately viewed the proposed questions as a thinly veiled attempt to impeach a state's witness by reason of immoral conduct and to pre-dispose the jurors to discredit her testimony. The phrasing of voir dire questions in a manner which preconditions the jurors' minds to react even subconsciously in a particular way to anticipated evidence is an abuse of counsel's privilege to examine prospective jurors. *See State v. Garrett,* 627 S.W.2d 635, 642 (Mo. banc 1982). We may not disturb the trial court's exercise of discretionary control over voir dire examination in the absence of manifest abuse and a real probability of injury. *State v. Betts,* 646 S.W.2d 94, 98 (Mo. banc 1983); *State v. Norton,* 681 S.W.2d 497, 499 (Mo.App.1984). In light of the dubious relevance of the proposed questions, we find no such abuse or probability of injury here. Point denied.

■ Appellant next contends that the state failed to exercise due diligence in locating Alan Baker for trial, and therefore, the trial court erred in allowing the state to read Mr. Baker's preliminary hearing testimony into evidence. Appellant argues that since Baker was the only non-biased witness who identified him as the perpetrator, his testimony could have been the deciding factor in appellant's conviction.

---

1. In fact, although Randall was subjected to extensive cross-examination by appellant's counsel regarding her engaging in prostitution, the only evidence of disputes between Randall and appellant related to his appropriation of her furniture and his refusal to work in an asphalt business she financed. She claimed she went to the police out of fear generated by appellant's repeated threats to harm her and members of her family after she left him.

Although the Sixth Amendment grants the defendant the right to confront all witnesses against him, an exception exists when a defendant had the opportunity to cross-examine an "unavailable" witness at a previous judicial proceeding against the defendant in the same matter. *State v. Ivicsics*, 604 S.W.2d 773, 779 (Mo.App. 1980). "To establish unavailability the state must show an exercise of due diligence and a good faith effort to secure the attendance of the witness at trial." *Id.* The "reasonableness of the prosecutor's efforts depends on the circumstances of the particular case." *State v. Lindsey*, 709 S.W.2d 499, 505 (Mo.App.1986).

In attempting to locate Mr. Baker, the prosecutor first attempted to contact Baker at his last known address and then contacted his ex-wife who did not know his whereabouts, but gave the prosecutor Baker's work number in Mesa, Arizona. The prosecutor was informed by Baker's supervisor that Baker had been laid-off from his job. The supervisor, however, gave the prosecutor the phone number of Baker's girlfriend's employer. The prosecutor then called that number, but was informed that the girlfriend had recently quit her job. The prosecutor then contacted Baker's ex-wife a second time and was referred to Mr. Baker's mother. Mr. Baker's mother also did not know Mr. Baker's location. The prosecutor then obtained a certificate under the Uniform Law to Secure Attendance of a Witness and directed a witness subpoena to Ed Campion, an investigator with the Phoenix, Arizona prosecutor's office.

The investigator went to Baker's last known address and was informed by Baker's landlady that Mr. Baker and his girlfriend had recently moved out of their apartment and that Florida or Georgia would be a good place to look for them.

Appellant argues that the prosecutor failed to exercise due diligence because he failed to contact Mr. Baker at the address in Phoenix, Arizona which Baker left with the court following the preliminary hearing. Although the law requires the prosecutor to make a good faith effort to locate a witness, "[the] law does not require the doing of a futile act." *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980); *State v. Lindsay*, 709 S.W.2d at 507. In *Lindsay*, even though service of process was misdirected, the court held that the prosecutor had exercised due diligence because the evidence showed that the witness had already left his last known address by the time the prosecutor attempted service of process. *Id.* It is apparent from the information furnished to Mr. Campion of the Phoenix prosecutor's office that the address in Mesa was Baker's last address. Under the circumstances, we find that the prosecutor exercised due diligence in locating the witness and the trial court did not err in allowing Alan Baker's preliminary hearing testimony to be read into evidence.

Finally, appellant argues that the trial court erred by allowing the prosecutor to read into evidence, under the guise of rehabilitation, Dwayne McIntyre's police statement. In his statement to the police McIntyre stated that appellant and Ms. Randall came over to his house on the evening of the robbery and he watched as they counted the money and burned gas charge slips. On cross-examination, McIntyre admitted that three days before trial, he went to the police and informed them that his earlier statement was a lie. He also admitted on cross-examination that after his retraction the police presented him with a document to sign informing him that he could be prosecuted for hindering prosecution if he did not testify truthfully at trial. On redirect the state read the portions of the witness's police statement which were consistent with his in-court testimony. The witness then testified that the statement was true.

Appellant contends that defense counsel's questions concerning the witness's retraction of his statement to the police did not elicit any specific inconsistencies with his in-court testimony. He argues that since the state first asked the witness whether his statement to the police was substantially the same as his trial testimony, it was error for the trial court to allow

the state to read into evidence the statement Mr. McIntyre made to the police.

"[O]nce a witness admits making a prior statement inconsistent with his present trial testimony, ... it is not error for the court to allow a prior consistent statement to be used for the purpose of rehabilitating the witness." *State v. Earvin*, 539 S.W.2d 615, 616 (Mo.App.1976). By eliciting Mr. McIntyre's admission that he lied to the police when giving them his statement and by raising the inference that his trial testimony was the product of the prosecutorial coercion, defense counsel put at issue the veracity of Mr. McIntyre's entire in-court testimony concerning events on the evening of the robbery. The trial court, therefore, did not abuse its discretion by allowing the state to "straighten out" the inconsistency by reading the witness's prior statement to the police and asking him if the statement was true. *State v. Thompson*, 705 S.W.2d 38, 40 (Mo.App.1985); *State v. Johnson*, 684 S.W.2d 581, 583 (Mo. App.1984).

██ Furthermore, even if the reading of Mr. McIntyre's police statement was improper rehabilitation, appellant has failed to demonstrate any prejudice from this error. Although a statement read to rehabilitate a witness is not confined to the subject of the impeachment, and is therefore improper, if the statement is identical to the witness's in-court testimony, it is cumulative and harmless. *State v. Haggard*, 619 S.W.2d 44, 48 (Mo. banc 1981); *State v. Clark*, 711 S.W.2d 928 (Mo.App.1986).

The judgment is affirmed.

SATZ, C.J., and SIMEONE, Senior Judge, concur.