STATE of Missouri, Plaintiff–
Respondent,

v.

Randy McKELLER, Defendant–
Appellant.

No. 27657.

Missouri Court of Appeals,
Southern District,
Division One.

March 11, 2008.

Motion for Rehearing or Transfer to
Supreme Court Denied April 2, 2008.

Maleaner Harvey, St. Louis, for appel-
lant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Randy McKeller (defendant) appeals convictions for murder in the first degree, § 565.020,[1] and armed criminal action, § 571.015. Defendant was charged as, found to be, and sentenced as a prior offender. *See* § 558.016. This court affirms.

Some time prior to May 2003, Trevor Neal, Kevin Weakley,[2] defendant, and a fourth person identified as "Antwon from Memphis" were shooting dice at a basketball court. Antwon, Trevor, and Kevin were cousins. There was testimony that someone lost money; that Antwon robbed defendant; that defendant later said "he was going to get all three of them because they was [sic] cousins, but Antwon ended up getting killed in a car accident."

On May 24, 2003, Trevor Neal was a passenger in a van. Justin Robinson stopped the van. Robinson looked inside then grabbed the keys from the ignition. Robinson pulled a gun from his pocket and told the occupants of the van to get lost. Trevor Neal remained in the van until Robinson forced him outside. Defendant was present when Robinson got Neal out of the van.

Once Neal was outside the van, Robinson started chasing him. Robinson put the gun he was carrying down in the middle of the road. Defendant grabbed the gun and ran to where Robinson had pushed Neal to the ground. A shot was fired after which defendant and Robinson took off running.

Trevor Neal had blood on his shirt. He was taken to a hospital where, following two surgeries, he died. The cause of death was loss of blood as a result of a single gunshot wound to the chest and abdomen.

Defendant raises three points on appeal. Each is directed to evidentiary rulings at trial. Point I argues that the trial court erred in permitting witness Justin Robinson, who was also charged with having murdered Trevor Neal, to "invoke his Fifth Amendment privilege against self-incrimination and in allowing Officer Bobby Sullivan to read into evidence Mr. Robinson's prior trial testimony." Defendant contends this prevented him from presenting a complete defense and from confronting the witness; that Robinson previously "waived his privilege against self-incrimination" by having testified (1) at a pretrial deposition, (2) at Robinson's own trial, and (3) at defendant's "first trial."[3]

At the start of defendant's trial, following opening statements, the jury was removed from the courtroom. The state called Justin Robinson and conducted the following inquiry.

Q. [by the prosecuting attorney] Mr. Robinson, it's my understanding, I got a letter, which is State's Exhibit 20, indicating that your attorney indicating that you were going to take the 5th Amendment today; is that correct?

A. Yeah.

Q. And that you do not wish to testify in this case at all?

---

1. References to statutes are to RSMo 2000.

2. The transcript also refers to this person as K.D. Wheatley. This court will use the name "Kevin Weakley" in this opinion.

3. The trial court's docket sheets that are included in the legal file reveal that defendant's case was previously tried; that after submitting the case to a jury, the trial court found the jury was "deadlocked 9–3 and declare[d] a Mistrial."

A. Right.

Q. And part of the reason is, because you've got a pending appeal at this time?[4]

A. She just thinks it's in my best interest.

Q. And with that, you're going to refuse to testify here today?

A. Yeah.

After brief inquiries by defense counsel and by the trial judge, the judge found that "Mr. Robinson ha[d], upon advise of counsel, exercised his rights under the 5th Amendment to not incriminate himself," and discharged him as a witness. The jury was returned to the courtroom and trial resumed.

Near the end of the state's case Detective Bobby Sullivan was called as a witness. He read the testimony Justin Robinson had given from a transcript of defendant's previous trial. *See* n. 2, *supra.* Robinson's testimony included what defendant told Robinson about being robbed. The testimony also described what occurred on May 24, 2003, when Trevor Neal was killed.

■ As this court understands defendant's argument, he contends the trial court erred in finding Robinson was entitled to exercise his 5th Amendment privilege (1) because Robinson had waived that privilege by previously testifying in other proceedings, and (2) because Robinson had previously been convicted for his participation in the offense. Defendant argues that the trial court committed error in not requiring Robinson to testify; that, therefore, Robinson was not unavailable as a witness so as to permit the reading of the transcript of his prior testimony.

The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. The privilege protects an individual from being an involuntary witness against himself in any proceeding, criminal or civil, formal or informal, where his answers might incriminate him in future criminal proceedings. *State ex rel. Munn v. McKelvey,* 733 S.W.2d 765, 768 (Mo.banc 1987). The privilege extends not only to answers that would completely reveal guilt of a crime, but also to questions whose answers might reveal facts which could be a link in a chain of evidence connecting him to a crime. *Id.; State ex rel. Flynn v. Schroeder,* 660 S.W.2d 435, 437[4] (Mo.App.1983).

*State v. Carey,* 808 S.W.2d 861, 865 (Mo. App.1991). In order to receive 5th Amendment protection, one desiring to avail himself of the privilege it affords must claim that protection. *Rogers v. U.S.,* 340 U.S. 367, 370–71, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

■ Robinson had testified in other proceedings concerning facts relative to the subject about which inquiry was made in this case. However, the 5th Amendment privilege applies to the particular proceeding in which it is claimed. The fact that a witness who claims its protection had previously testified in a different trial or another hearing is not a waiver in a subsequent trial.[5] *See* 8 Wigmore, *Evidence,* § 2276, p. 136 (1991 Supp.). *See also,*

---

4. This case was tried February 2 and 3, 2006. The opinion in Justin Robinson's case, *State v. Robinson,* 196 S.W.3d 567 (Mo.App.2006), was filed May 9, 2006.

5. In *State v. Gordon,* 391 S.W.2d 346, 349 (Mo.1965), Missouri accepted this rationale in holding that a witness who claimed the protection of the 5th Amendment could not have his claim of privilege negated by "impeachment" by prior statements.

*Galloway v. Commonwealth,* 374 S.W.2d 835, 836 (Ky.1964).

Defendant's argument that Robinson was not entitled to claim 5th Amendment protection because Robinson had already been convicted of the offense for which he sought protection also fails in that the case in which Robinson was found guilty was still on appeal at the time his testimony was sought in this case. *See* n. 3, *supra.* Albeit there is no unanimous agreement that the right to claim 5th Amendment protection continues following conviction until any appeal is resolved, the 8th Circuit, in *U.S. v. Duchi,* 944 F.2d 391 (8th Cir.1991), suggests:

> The better rule, however, appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal. *See, e.g., Frank v. United States,* 347 F.2d 486, 491 (D.C.Cir.1965) ("Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction"); *Mills v. United States,* 281 F.2d 736, 741 (4th Cir.1960) (witness may claim privilege as long as time for appeal from conviction has not expired). *But see In re Bando,* 20 F.R.D. 610, 615 (S.D.N.Y.1957) (Fifth Amendment privilege is not maintained after conviction merely because a petition for writ of certiorari has been filed with the Supreme Court.)

*Id.* at 394. This court agrees with that assessment.

Robinson was unavailable to testify by reason of asserting his 5th Amendment privilege. Because he had testified at defendant's earlier trial for the same offense and had been subject to cross-examination by defendant, the prior testimony was admissible at the second trial. *State v. Taylor,* 742 S.W.2d 625, 628 (Mo.App.1988). *See also, State v. Holt,* 592 S.W.2d 759, 765–66 (Mo.banc 1980); *State ex rel. Chaney v. Franklin,* 941 S.W.2d 790, 792 (Mo. App.1997). Point I is denied.

Point II is directed to testimony of Dion Savage. He was related to Trevor Neal and to Antwon. They were his cousins. The prosecuting attorney asked Savage the following questions and Savage gave the following answers.

Q.... Did you ever hear something happen between [defendant] and Trevor regarding Antwon?

A. Yes, sir.

Q. Could you tell the ladies and gentlemen what you know about that?

[Defense counsel objected that any testimony would be "clearly hearsay evidence." The trial court asked the prosecutor if he could "lay some foundation as to this information," whereupon the inquiry resumed.]

Q. Did Trevor ever tell you anything about something happening regarding something with [defendant]?

A. Yes.

Q. And what did he tell you?

A. He told me that, well [defendant] was saying that he was going to get him. See, it happened between Antwon, [defendant], Trevor, and my other cousin, K.D.

Q. And what's—

[Defense counsel objected on the basis that the witness was "talking about something that he has no personal knowledge of, it's hearsay evidence." After the prosecuting attorney responded that he was "going to try to show there was a motive ...," the trial court overruled the objection. The witness was told he could proceed.]

A. Yeah, see, it happened, it started like with K.D., Antwon, [defendant] and Trevor, said, they was up there, gambling, shooting dice on the basketball court, and somehow, some, somebody lost they [sic] money, and, so somebody got mad and so they said Antwon robbed him, and Trevor and Kevin, they didn't have nothing to do with it, it was Antwon, and so [defendant] was saying that he was going to get all three of them because they was cousins, but Antwon ended up getting killed in a car accident down in Memphis, so he was telling Trevor, yeah, we going to put you where you cousin at.

Savage's testimony continued without further objection. Savage was asked, "Now did you hear [defendant] tell him that?" Savage answered, "I heard." Savage said he heard the statement at a game room when defendant "was trying to running [sic] Trevor from the game room...."

Point II argues that the trial court erred "in overruling [defendant's] objections to Dion Savage's testimony that ... [defendant] and Justin Robinson allegedly told [Trevor] they were going to 'put him where his cousin cousin['s][sic] at,' referring to [Trevor's] cousin Antwon who was killed in a car accident." Defendant contends the testimony was hearsay; that it was highly prejudicial to [defendant], whose defense at trial was he did not act with [Robinson] in shooting [Trevor] nor did he ... shoot and kill [Trevor].

The state points out that the record reflects the testimony regarding the statement defendant made was that Savage heard defendant tell Trevor he [defendant] was going to put Trevor where his deceased cousin was. Being a statement Savage heard defendant make, the statement is an admission and, therefore, admissible in that it is material to the issues being tried and is relevant. *See State v. Howell,* 143 S.W.3d 747, 751 (Mo.App. 2004). Point II is denied.[6]

■ Point III is directed to testimony by Casey Blackmon. Point III argues that the trial court erred "in overruling ... objections to Casey Blackmon's testimony that prior to the shooting she heard Justin Robinson say to [defendant] and others at the basketball court that he [sic] 'he had his 9 for that boy' referring to [Trevor Neal] and then he patted the gun on his waist.'" Point III contends the statement was hearsay.

Casey Blackmon had known defendant and Justin Robinson for "a lot of years"; "[f]orever." Point III is directed to the following exchange.

Q. Did, and, did something happen, or, were you present, did you have an interaction with Justin and [defendant] at some point prior to the shooting yourself?

A. Yeah ... we were on the basketball court, me, some of my friends, you know, and, Justin was up there, and [defendant] was there, he was sitting down and I could tell, that, you know, he was mad because his lip was busted, you know, and he was just sitting there, and, Justin was like, yeah, y'all.

[Defendant's trial attorney interjected an objection at that point asserting, "[H]earsay again." The objection was overruled and the trial court told the

**6.** Point II refers to "objections" being overruled by the trial court. However, this court does not discern from Point II any allegation of error other than that directed to the overruling of the hearsay objection heretofore discussed. Mindful that "[a]n appellate court reviews only issues raised in the points relied on in an appellant's brief," *State v. Rogers,* 973 S.W.2d 495, 498 (Mo.App.1998), this court finds no other issue for determination in Point II.

witness she could proceed after which the following occurred.]

Q. Thank you.

A. He said, yeah, y'all see what he did to my boy, referring to [defendant], he was like, but that's okay, because I got this 9 for that boy, and he pointed, he patted on his waist on his gun.

. . .

Q. Now, at that time that Justin was making these statements to you, what was [defendant] doing?

A. He was just sitting there and he was just going, you know, just nodding and grinning, but he wasn't saying anything, he was just nodding.

Q. Nodding and grinning?

A. Yeah.

The testimony to which Point III is directed was not the only evidence that Justin Robinson told defendant that Robinson had a weapon he planned to use on Trevor Neal. Defendant testified in his own defense. He was asked in direct examination by his attorney about events that occurred at a time before the shooting when Casey Blackmon was present. Defendant said he thought the time "was close to the shooting." Defendant was asked if he told Casey Blackmon that he was going to kill Trevor. Defendant answered, "No, sir. Justin tells Ms. Blackmon he was going to kill Trevor. He didn't say he was going to kill him, he just said he had his pistol and he was going to off his pistol, that was it."

Had it been error to admit Ms. Blackmon's testimony, a finding this court need not and does not make, no prejudice or reversible error occurred in that other evidence was admitted that established the same fact; that the statement in question was made. *See State v. Zagorski,* 632 S.W.2d 475, 480 (Mo.banc 1982). Point III is denied.[7] The judgment is affirmed.

BATES, J., concurs.

SCOTT, J., concurs in separate opinion.

DANIEL E. SCOTT, Judge, concurring.

I agree that Robinson's privilege against self-incrimination, unless otherwise waived, continued during the appeal of his conviction, and that testifying in his own case did not necessarily waive his privilege in this case. *See Martin v. Flanagan,* 259 Conn. 487, 789 A.2d 979, 984–86 & n. 4–7 (2002) (collecting various federal, state, and secondary authorities).

Yet Robinson testified not only at his own trial and a pre-trial deposition, but also in the first (hung jury) trial of this case. That the privilege is not waived or affected by testifying in an earlier trial of the same case is supported by much thinner authority; apparently a few isolated cases and perhaps dicta at that. In the absence of controlling Missouri authority, I would not be inclined to so hold as any type of general proposition. However, I cannot say the trial court abused its discretion, since there is some case authority

---

7. Point III, as did Point II, refers to "objections" being overruled by the trial court. However, the only allegation of error was with respect to the hearsay objection posed to the statement Robinson made in defendant's presence regarding "his 9." After alleging that allegation of error, Point III includes language that states that "Ms. Blackmon also testified that Mr. Neal told her Robinson and [defendant] were following him in a car and picking on him." Point III alleges no error with respect to that assertion; further, had it done so, Point III would have collapsed disparate contentions of error into a single point and have been multifarious, thereby preserving nothing for review. *Atkins v. McPhetridge,* 213 S.W.3d 116, 120 (Mo.App.2006).

for its ruling, nor can I discern prejudice in any event. Accordingly, I concur.