**STATE of Missouri, Respondent,**

v.

**Landers PAGE, Appellant.**

**No. ED 92706.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 16, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 19, 2010.

Application for Transfer to Denied
May 25, 2010.

Lisa M. Stroup, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Landers Page (Defendant) appeals from the trial court's judgment, following a jury trial, of one count of class C felony stealing, in violation of Section 570.030, RSMo Cum.Supp.2006,[1] and one count of class A misdemeanor stealing, in violation of Section 570.030. Finding Defendant to be a prior and persistent offender as defined in Section 558.016, the trial court sentenced Defendant to fifteen years on the first count and a concurrent one year term on the second count. We affirm Defendant's conviction and sentence but remand the case to correct a clerical mistake in Defendant's sentence and judgment form.

## Background

The State of Missouri (State) charged Defendant with two counts of stealing, in connection with his alleged actions on December 19, 2007. On Count I, a class C felony, the State averred that Defendant stole Jeanne Silvestrini's (Silvestrini) credit card without her consent and with the purpose to deprive her thereof. On Count II, a class A misdemeanor, the State averred that Defendant stole Silvestrini's purse, an item valued at less than $500, without her consent and with the purpose to deprive her thereof. Furthermore, the State's indictment charged Defendant as a prior and persistent offender, in that Defendant pleaded guilty to two counts of felony stealing on February 23, 2005, and pleaded guilty to first degree felony robbery on January 26, 1987.

Defendant's jury trial took place January 21–22, 2009. During trial, Defendant presented no witnesses on his behalf. The State's evidence consisted of the following:

Silvestrini testified that she worked as an administrative coordinator at Washington University School of Medicine. Her office was located on the seventh floor of the Clinical Science and Research Building (CSRB) in the Barnes Jewish Hospital medical complex. On the morning of December 19, 2007, she stepped out of her office for a moment to retrieve a document from printer in a nearby office. Upon her return, she saw a man whom she did not

---

1. All subsequent statutory citations are to RSMo Cum.Supp.2006, unless otherwise indi- cated.

recognize quickly leave her office and exit into the seventh floor stairwell. She approximated the distance between herself and the man to be three feet, observed that the man was wearing a "very recognizable" blue sweater with multi-colored stripes, and believed the man to be concealing something that he was holding. Silvestrini then immediately checked her office and noticed that her purse, which she kept in her desk drawer, was missing. She followed the man into the stairwell, saw him a flight below her, and yelled for him to give her purse back. At this point, the man "immediately started running at a pretty fast pace." She initially continued after the man, but then returned to her office and called the building's security officers. After she got off the phone with security, one of her co-workers, Nathan Felix (Felix), went down the stairwell to look for the man. In court, Silvestrini identified Defendant as the man she saw exiting her office and running down the stairwell.

Greg Farnham (Farnham), a security response officer for the Washington University School of Medicine, testified that, around 10:00 a.m. December 19, 2007, he received a dispatch regarding a suspected theft at the CSRB. The dispatch described the suspect as a black male wearing a dark colored sweater with bright stripes who was approximately six feet tall. Farnham and fellow response officer Daniel Chettle (Chettle) canvassed the area around the CSRB. Chettle encountered a man fitting the dispatch's description in the lobby which connects the CSRB with the Pediatrics Building. Chettle and Farnham took the man into their custody. In court, both Chettle and Farnham identified Defendant as the man they apprehended.

While Chettle detained Defendant, Felix, who had followed Defendant into the lobby, led Farnham to a trash can located in the CSRB's third floor men's restroom.

Because the stairwell exits on both the first and second floors were blocked, the third floor was the lowest floor from which a person could exit the stairwell. Farnham emptied the trash can and sorted its contents. Inside, he found Silvestrini's driver's license, a purse, and other items which apparently had been removed or had fallen out of the purse. Farnham then placed the items which he believed to come from the purse in another trash bag, and he carried the trash bag and purse to Silvestrini's office. Silvestrini identified the purse as belonging to her. When Silvestrini looked in the purse, she noticed that her credit card had been removed from her wallet but was still in the purse. Though every item within her purse appeared out of place, Silvestrini testified that no item was missing.

Farnham then escorted her to the Protective Services office, where security personnel were detaining Defendant. At that time, Silvestrini identified Defendant through a two-way mirror as the man she saw emerging from her office and running down the stairwell. At trial, she repeated that she was "[o] ne hundred percent positive" that the man detained at the Protective Services office was Defendant.

On January 21, 2009, before the case was submitted to the jury and outside the jury's presence, the trial court held a hearing to determine Defendant's prior and persistent offender status. On the record at this hearing, the State alleged that Defendant had previously pleaded guilty to three felonies. The State listed each felony, each cause number, and each date that the Defendant pleaded guilty. Thereafter, the trial court asked Defendant under oath and on the record if the convictions read by the State were indeed his prior convictions, to which Defendant affirmatively agreed. The trial court then found "[D]efendant to be a prior and persistent offender for the sake of punishment."

On January 22, 2009, the jury found Defendant guilty of the charges of stealing a credit card (Count I) and stealing an item under $500 (Count II). Defendant filed a Motion for Judgment of Acquittal, which the trial court denied. On February 6,[2] Defendant filed a Motion for Acquittal or in the Alternative for a New Trial, which the trial court denied. The trial court sentenced Defendant on February 27, ordering Defendant to serve a term of fifteen years for Count I and a concurrent one year term for Count II.

Defendant filed his Notice of Appeal on March 5, 2009. This appeal follows.

### Points on Appeal

Defendant raises two points on appeal. In his first point, Defendant claims that the trial court erred in finding him to be a prior and persistent offender because the State did not establish sufficient facts to warrant a finding beyond a reasonable doubt that he was a prior and persistent offender.

In his second point, Defendant claims that the trial court erred in denying his motion for judgment of acquittal at the close of the evidence because there was insufficient evidence to support the verdicts. Defendant alleges that the State failed to establish beyond a reasonable doubt that he stole a credit card and a purse.

We will review each of Defendant's points separately.

### Discussion

#### I. Point 1—Trial Court's Finding That Defendant Was a Prior and Persistent Offender

In Defendant's first point, he argues that the trial court erred in finding him to be a prior and persistent offender because the State did not establish sufficient facts to warrant a finding beyond a reasonable doubt that he was a prior and persistent offender. Specifically, Defendant contends that the State failed to establish his prior felony convictions because the State did not introduce into evidence any certified and authenticated convictions, because the trial court did not take judicial notice of court records physically before it, and because Defendant never consented to the contents of any of his records being admitted into evidence.

#### A. Plain Error Standard of Review

Defendant concedes that, because he failed to object to the trial court's finding that he was a prior and persistent offender at trial and in his motion for new trial, his first point was not properly preserved. He asks that we exercise our discretion to review for plain error. Rule 30.20.[3] Plain errors consist of errors that are evident, obvious, and clear. State v. Nesbitt, 299 S.W.3d 26, 28 (Mo.App. E.D.2009). We shall reverse only where a plain error affecting a substantial right results in a manifest injustice or a miscarriage of justice. State v. Wurtzberger, 265 S.W.3d 329, 339 (Mo.App. E.D.2008). If it appears that the trial court improperly sentenced the defendant as a prior or persistent offender, plain-error review is appropriate, Nesbitt, 299 S.W.3d at 28, because a court may not impose a sentence which is in excess of that authorized by law. State v. Anderson, 294 S.W.3d 96, 98 (Mo.App. E.D.2009). We will review Point I for plain error.

#### B. Merits of Appeal

---

**2.** The trial court granted Defendant ten additional days in which to file a motion for new trial.

**3.** All subsequent rule references are to Mo. R.Crim. Pro.2009, unless otherwise indicated.

■ Missouri defines a "prior offender" as "one who has pleaded guilty to or has been found guilty of one felony." Section 558.016.2. A "persistent offender" is defined as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016.3. The State must plead all essential facts in the information or indictment to warrant a finding that the defendant is a prior or persistent offender. Section 558.021.1. These facts must be pleaded, established, and found *before* the trial court submits the case to the jury. Section 558.021.2; *State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009) (holding the timing requirement to be mandatory). If the trial court finds beyond a reasonable doubt that a defendant is a prior and persistent offender, then the judge sentences the defendant, rather than allowing the jury to recommend a sentence. Section 557.036.4(2). A defendant found to be a persistent offender becomes subject to an enhanced maximum term of imprisonment. Section 558.016.7.

Here, to prove Defendant was a prior and persistent offender, the State alleged that Defendant pleaded guilty to three prior felonies. On the record at the Prior and Persistent Offender Hearing, the State proffered the following:

> The defendant is a prior offender in that on February 23rd of 2005 he plead[ed] guilty to the felony of stealing over 500 dollars and that was in Cause Number 22031–02218 here in the Circuit Court of St. Louis, Missouri. On February 23rd, 2005, he also plead[ed] guilty in a separate case to a separate incident ... to the felony of stealing in Cause Number 22031–02855 here in the Circuit Court of St. Louis, Missouri. And also, on January 26, 1987, he [pleaded] guilty to the felony of six counts of robbery in the [first] degree in Cause Number 22861–1304C. That was also here in the Cir-

cuit Court of St. Louis Missouri. In all three matters, he was represented by an attorney.

The trial court then asked Defendant if he agreed those guilty pleas were in fact his prior felony convictions, to which Defendant responded, "yes." Having heard this admission, the trial court found Defendant to be a prior and persistent offender.

In *State v. Johnson*, we held that "certified and properly authenticated copies of records of a defendant's prior convictions constitute admissible and sufficient evidence for purposes of sentence enhancement." 150 S.W.3d 132, 137 (Mo.App. E.D.2004). Additionally, we acknowledged that trial courts "may take judicial notice of their own records of a defendant's prior convictions in other previous proceedings to establish the essential facts warranting a finding that the defendant is a persistent offender, but only if the court's records of those convictions are physically before the court." *Id.* We explained that "the existence of a court record containing proof of a defendant's prior convictions is essential to the State's burden of proving whether the defendant is a prior or persistent offender ... unless the defendant consents to the admission of its contents." *Id.* Defendant argues that these methods of proof are exclusive.

However, contrary to Defendant's argument, in an unrelated case also named *State v. Johnson*, we held that where a defendant "admitted on the record that he committed the previous felony crimes and the date and the cause numbers for each guilty plea, ... [those] admissions relieve the State of the burden of proving all of the matters that ordinarily would be required to establish prior convictions." 237 S.W.3d 277, 284 (Mo.App. E.D.2007); *see State v. Johnson*, 837 S.W.2d 39, 41 (Mo. App. W.D.1992) (holding that "a defen-

dant's admission in court of prior convictions may properly be relied upon for purposes of enhancement of punishment"). As such, Defendant's own admissions in this case provided a sufficient basis for the trial court to find him to be a prior and persistent offender beyond a reasonable doubt. The trial court did not err. Point one is denied.

■ Defendant also contends that, at the Prior and Persistent Offender Hearing, "[he] was forced to become a witness against himself because the [trial] court questioned him under oath even though [he] chose not to testify on his own behalf at trial." This contention wholly lacks merit. The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. *State v. McKeller*, 256 S.W.3d 125, 127 (Mo.App. S.D.2008). This privilege protects an individual from being an involuntary witness against himself in any proceeding where his answers might incriminate him in future criminal proceedings. *Id.* However, to receive Fifth Amendment protection, one desiring to avail himself of the privilege it affords must claim that protection. *Id.* And, the privilege applies only to the particular proceeding in which it is claimed. *Id.* In this case, the record before us contains nothing to suggest that Defendant, who was represented by counsel throughout trial, attempted to avail himself of the Fifth Amendment's protections during the course of the Prior and Persistent Offender Hearing. Furthermore, nothing in the record even remotely suggests that the trial court compelled Defendant to be an involuntary witness against himself at this hearing. Defendant's argument that his subsequent decision not to testify at trial somehow taints his prior testimony at the Prior and Persistent Offender Hearing is unavailing.

■ Lastly, though not raised by either party, we find *sua sponte* that the trial court failed to record its finding as to Defendant's status as a prior and persistent offender on the written judgment and sentence form. A mistake in a judgment and sentence form regarding the marking of boxes designated for memorializing a finding of a defendant's prior and persistent offender status is considered a clerical mistake. *State v. Carroll*, 207 S.W.3d 140, 142 (Mo.App. E.D.2006). Such a mistake can be corrected by a *nunc pro tunc* order, so long as the trial court's intentions regarding the defendant's sentence is clear from the record. *Id.* Here, as mentioned above, the record clearly reflects the trial court's intention that Defendant be sentenced as a prior and persistent offender. Thus, the omission of a mark in the box designated for memorializing the trial court's finding that Defendant was a prior and persistent offender may be corrected by a *nunc pro tunc* order conforming the record to the trial court's actual findings.

## II. Point 2—Trial Court's Finding That Evidence Was Sufficient to Support Jury Verdict

In his second point, Defendant claims that the trial court erred in denying his motion for judgment of acquittal at the close of the evidence because there was insufficient evidence to support the verdicts. Defendant alleges that the State failed to establish beyond a reasonable doubt that he stole a credit card and a purse.

### A. Sufficiency of Evidence Standard of Review

Appellate review of a challenge to the sufficiency of evidence supporting a criminal conviction is limited to a determination of whether sufficient evidence was present-

ed at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Wurtzberger,* 265 S.W.3d at 335 (citing *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993)). In applying this standard of review, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inference to the contrary. *Id.* We do not act as a "super juror" with veto powers over the conviction, but rather give great deference to the trier of fact. *State v. Jones,* 296 S.W.3d 506, 509–10 (Mo.App. E.D.2009).

### B. Merits of Appeal

■ We must look to the elements of each offense charged because, when we consider the sufficiency of the evidence to support a conviction, there must be sufficient evidence of each element of the offense. *Wurtzberger,* 265 S.W.3d at 335. The elements of an offense are derived from the statute establishing the offense or, where relevant, common law definitions. *Id.*

Here, Defendant was convicted of two counts of stealing, the elements of which are found in Section 570.030. "The elements of stealing are: (1) an appropriation; (2) of property or services; (3) of another; (4) with the purpose to deprive the other thereof; and (5) accomplished either without the owner's consent or by deceit or coercion." *State v. Presberry,* 128 S.W.3d 80, 91 (Mo.App. E.D.2003) (citing Section 570.030). If the appropriated property is proven to be a credit card, the crime of stealing is classified as a class C felony. Section 570.030.3(3)(c). If the appropriated property fails to fall under any other section of the stealing statute enu-

merating specific penalties and is worth under $500, the crime of stealing is classified as a class A misdemeanor. Section 570.030.8.

In this case, Defendant argues that a reasonable juror could not have found beyond a reasonable doubt that he stole Silvestrini's purse and credit card with an intent to permanently deprive her thereof. We disagree.

■ Just moments before Silvestrini noticed that her purse and credit card were missing from her office desk, she saw Defendant, a man who did not work in her building and who appeared to be concealing something in his hands,[4] emerge from her office and proceed to the stairwell. When Silvestrini followed Defendant into the stairwell and shouted at him to return her purse, Defendant fled. Defendant failed to offer any explanation as to why he was in the CSRB, why he was in Silvestrini's office, or why he ran away when Silvestrini yelled for him to return her purse. As such, it is reasonable for a juror to infer from these circumstances that Defendant stole Silvestrini's purse and credit card, intending not to give them back. *See State v. Prier,* 634 S.W.2d 197, 200 (Mo. banc 1982) (holding that if there is no reasonable explanation for flight from a crime scene, a defendant's presence at the crime scene and his flight therefrom might be sufficient to support a conviction, so long as the State demonstrates a substantial nexus between the defendant and the commission of the crime); *see State v. Simpson,* 778 S.W.2d 705, 707 (Mo.App. E.D.1989) (holding that a "defendant's presence, opportunity, ... and flight are circumstances from which his purpose or intent may be inferred").

---

4. "An act resembling an effort to conceal constitutes evidence reasonably implying con-

sciousness of guilt." *State v. Burnett,* 955 S.W.2d 785, 786 (Mo.App. E.D.1997).

Furthermore, because the stairwell exits to the first and second floors were blocked, the lowest floor from which Defendant could exit the stairwell was the third floor. As such, a reasonable juror could infer that these circumstances placed Defendant in the vicinity of the third floor men's restroom, the site where the thief abandoned Silvestrini's purse and credit card shortly after the theft. *See State v. Martin*, 211 S.W.3d 648, 651–52 (Mo.App. W.D. 2007) (holding that "[c]ontrol of property in a manner adverse to the property rights of an owner, even for an instant, is sufficient to demonstrate an intent to deprive the owner of his property permanently").

Taking these circumstances as a whole, we find that a reasonable juror could conclude beyond a reasonable doubt that Defendant appropriated Silvestrini's purse and credit card with the intent to steal them. As such, the trial court did not err in denying Defendant's motion for judgment of acquittal at the close of the evidence. Point II is denied.

### *Conclusion*

Based on the foregoing, we conclude that both the trial court's conviction and prior and persistent offender finding are to be affirmed, but we remand for the trial court to correct the clerical mistake in the written sentence and judgment form.

GEORGE W. DRAPER III, and GARY M. GAERTNER, JR., JJ., concur.