**STATE of Missouri, Plaintiff–Respondent,**

v.

**Steven F. PASSLEY, Defendant–Appellant.**

**No. SD 31302.**

Missouri Court of Appeals,
Southern District,
Division One.

June 7, 2012.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Following a bench trial, Steven Fitzgerald Passley ("Defendant") appeals his conviction and sentencing as a prior and persistent offender on the class C felony of

stealing, pursuant to section 570.030.3(3)(c).[1] Defendant claims the enhancement of the offense from a class A misdemeanor, *see* section 570.030.8, to a class C felony was erroneous in three respects: section 570.030.3 does not provide for the enhancement; the information did not allege an element necessary for the enhancement; and the evidence adduced at trial was not sufficient to support the enhancement. Finding no merit in any of Defendant's claims, we affirm.

### Factual and Procedural Background

On February 1, 2010, the victim was shopping at a Wal–Mart store in Kennett when her cell phone case, which contained her cell phone and bankcard, was stolen after she put it down on top of the jewelry counter. She reported the theft to store security and police were notified. The same evening, two transactions occurring after the theft were posted to the victim's bank account: one at a Casey's store in Kennett and the other at a Wal–Mart store in Malden. The victim learned of these transactions after she contacted her bank the following morning, and she reported them to the police.

Store security personnel obtained a still photograph from surveillance video showing Defendant picking up the cell phone case, placing it under his arm, and leaving the store with his wife. The photograph was provided to police, and when it was posted at the police station, Defendant was identified by an officer at the station.

Defendant was initially charged with felony stealing in Dunklin County. The information charged that Defendant committed the class C felony of stealing, in violation of section 570.030, "in that on or about February 1, 2010, ... [Defendant] appropriated a credit device which proper-

ty was owned by [victim], and [Defendant] appropriated such property without the consent of the owner and with the purpose to deprive her thereof." The information further alleged that Defendant was a prior and persistent offender, having entered pleas of guilty to two or more felonies committed at different times. Following a change of venue, Defendant waived his right to a jury trial and was tried by the court in Stoddard County.

At trial, Defendant's wife testified that she and Defendant were shopping for a ring at Wal–Mart when he abruptly told her he was ready to leave. After they left the store, Defendant handed her "a wallet" and told her to look inside, where she found a cell phone and bankcard bearing the victim's name. Thereafter, they went to a Casey's store in Kennett and purchased gas using the stolen card. At a Wal–Mart store in Malden, they attempted to purchase a printer using that card, and Defendant's wife used the victim's name when she signed for the purchase.

Defendant rested his case without presenting any evidence, and the trial court took the matter under advisement. Four days later, the trial court entered its order finding Defendant guilty as charged and thereafter sentenced Defendant as a prior and persistent offender to ten years' imprisonment. Defendant now appeals, presenting three points relied on challenging his conviction of the class C felony of stealing rather than the class A misdemeanor of stealing. We discuss his points in reverse order.

### Discussion

### Section 570.030 Provides for Enhancement of Stealing to Class C Felony

In his third point, Defendant claims that after its amendment in 2002, section

---

1. References to section 570.030 are to RSMo Cum.Supp.2009, unless otherwise indicated.

570.030.3 no longer provides for the enhancement of the stealing offense from a class A misdemeanor to a class C felony. Defendant initially premises his point on section 570.030.8, which provides "[a]ny violation of this section for which no other penalty is specified in this section is a class A misdemeanor." Defendant then points out that before its amendment in 2002, section 570.030.3, RSMo 2000, provided that "*[s]tealing* is a class C felony if: . . . (3) The property appropriated consists of: (c) Any credit card or letter of credit." (Emphasis added). In 2002, however, by H.B. 1888, this language was changed by the legislature to read "*Notwithstanding any other provision of law, any offense in which the value of property or services is an element* is a class C felony if: . . . (3) The property appropriated consists of: . . . (c) Any credit card or letter of credit." (Change in italics). Next, Defendant cites us to *State v. Ruth,* 830 S.W.2d 24, 27 (Mo.App.1992), for the proposition that "with stealing, the value of the appropriated property is not an element of the offense." Therefore, Defendant argues, "[i]f value is not an element of the offense, subsection 3 to *§ 570.030,* which contains the list of enhancement factors (including credit card), does not apply because, by its own terms, the list only applies to '*any offense in which the value of property or services is an element.*'"

Defendant concedes that this issue was not preserved for appellate review because it was not presented to the trial court and therefore, he seeks plain error review under Rule 30.20.[2]

We are not required to review for plain error; to do so is within our discretion. The two-step analysis is (1) did the trial court commit evident, obvious, and clear error affecting the defendant's substantial rights; and (2) if so, did such plain error actually result in manifest injustice or a miscarriage of justice? Unless a defendant gets past the first step, any inquiry should end.

*State v. Smith,* 293 S.W.3d 149, 151 (Mo. App.2009) (internal citations and quotations omitted). Here, we find no evident, obvious, and clear error affecting Defendant's substantial rights and end our inquiry.

"'Statutory interpretation is an issue of law which this court reviews de novo.'" *State v. Lewis,* 188 S.W.3d 483, 486 (Mo. App.2006) (quoting *State ex rel. Nixon v. Premium Standard Farms, Inc.,* 100 S.W.3d 157, 161 (Mo.App.2003)). "Courts apply certain guidelines to interpretation, sometimes called rules or canons of statutory construction, when the meaning is unclear or there is more than one possible interpretation." *State v. Rowe,* 63 S.W.3d 647, 649 (Mo. banc 2002). When the words are clear, however, there is nothing to construe beyond applying the plain meaning of the law. *Id.* (citing *State ex rel. Mo. Pac. R.R. v. Koehr,* 853 S.W.2d 925, 926 (Mo. banc 1993)).

"In interpreting a statute, we are to ascertain the intent of the legislature." *State v. Harris,* 156 S.W.3d 817, 822 (Mo. App.2005). Such intent, however, can only be derived from the words of the statute itself. *Rowe,* 63 S.W.3d at 650 (citing *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998)). "Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning." *Id.* (citing *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993)). "A court will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Akins v. Dir.*

---

**2.** All rule references are to Missouri Court Rules (2012).

*of Revenue,* 303 S.W.3d 563, 565 (Mo. banc 2010).

In *Ruth,* the linchpin of Defendant's argument, the original information charged the defendant with the class C felony of stealing and, in addition, alleged that the value of the stolen property was $150 or more.[3] *Ruth,* 830 S.W.2d at 25. On the eve of trial, the State filed an amended information in which no value was assigned to the stolen property, but rather, it was alleged that the defendant had two prior stealing convictions, which, at that time, enhanced the offense of stealing from a class A misdemeanor to a class C felony pursuant to section 570.040.1, RSMo 1986. *Id.* The defendant argued on appeal that the trial court erred in allowing the State to file the amended information because it charged a new offense. *Id.* at 26. This court disagreed because "[t]he value of the appropriated property is not an element of the offense of stealing[,]" as set forth in 570.030.1.[4] *Id.* Therefore, "the deletion of an allegation of ... value did not charge the defendant with an additional or different offense." *Id.* As the court noted, the purpose of the allegation of value was to "provide for increased punishment." *Id.*

After *Ruth* was decided, the United States Supreme Court, as foreshadowed in *Jones v. U.S.,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." *Apprendi v.* *New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Our Supreme Court has since consistently recognized that *Apprendi* and *Jones* elevated those facts giving rise to increased punishment to "the functional equivalent of an element of a greater offense." *See* *State v. Johnson,* 284 S.W.3d 561, 585 (Mo. banc 2009); *State v. Clark,* 197 S.W.3d 598, 601 (Mo. banc 2006); *State v. Jaco,* 156 S.W.3d 775, 780 (Mo. banc 2005); *State v. Glass,* 136 S.W.3d 496, 513 (Mo. banc 2004).

■ When read in the light of *Apprendi* and *Jones,* the clear and plain words used in section 570.030.3 show the legislative intent to treat the property types increasing the punishment for stealing from a class A misdemeanor to a class C felony as elements of a greater offense where the value of the appropriated property is put in issue. Here, the value of the item alleged to have been stolen, due to its nature and its inherent value as assigned to it by the legislature in listing it among the types of property the theft of which would enhance punishment, was put in issue by the allegation in the information that Defendant was charged with a class C felony for appropriating a credit device.[5]

Any other reading of the clear and plain words used in the statute, as suggested by Defendant, leads to the absurd and illogical result that the legislature chose to amend the stealing statute to provide an enhanced punishment for some other offense or offenses but not for the offense mentioned in that very statute and would

---

3. At that time, the value differentiating misdemeanor stealing and class C felony stealing was $150.00. In 1998, section 570.030.3(1) was amended to raise that amount to $750.00, L.1998, H.B. No. 1147, § A, and was subsequently amended in 2002 to lower it to $500.00, L.2002, H.B. No. 1888, § A.

4. Section 570.030.1 provides that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion."

5. Defendant makes no argument or claim that the appropriated card has no value.

ignore and render meaningless the language in section 570.030.8 that specifically references other penalties "specified in this section." Defendant's third point is denied.

### *Information was Sufficient*

■ Before the State began presenting its case, Defendant objected to the form of the information on the basis that section 570.030.3(3)(c) provides that the theft of a credit card or letter of credit elevates the crime to a class C felony, but Defendant was charged with the theft of a "credit device," which "does not qualify under any of the provisions of" subsection (3)(c). The State argued that the definition of "credit device" under Chapter 570 "includes what is a credit card." The trial court overruled Defendant's objection, and the trial proceeded.

In his second point, Defendant asserts that the trial court erred in overruling his pre-trial objection to the State's information charging him with felony stealing. Defendant contends that the information failed to contain all the essential factual elements of felony stealing, "in that the information charged that Defendant committed felony stealing because he stole a 'credit device,'" which, Defendant contends, is "broader than and includes more than a credit card," and section 570.030.3(3) requires that the property stolen must be a "credit card or letter of credit." [6]

The State's information is set forth, in pertinent part, below:

The Prosecuting Attorney of the County of Dunklin, State of Missouri, charges that the defendant

### COUNT I

In violation of Section 570.030, RSMo, committed the class C felony of stealing, punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that on or about February 1, 2010, in the County of Dunklin, State of Missouri, the defendant appropriated a credit device which property was owned by [the victim], and the defendant appropriated such property without the consent of the owner and with the purpose to deprive her thereof.

"[A]s a general rule, due process mandates that a criminal defendant may not be convicted of an offense not expressly charged in the information or indictment." *State v. Collins,* 154 S.W.3d 486, 494 (Mo. App.2005). Rule 23.01 provides, in part, that an "indictment or information shall: ... [s]tate plainly, concisely, and definitely the essential facts constituting the elements of the offence charged, including facts necessary for any enhanced punishment[.]" Rule 23.01(b)(2).

"The purpose of an indictment or information is to inform the accused of the charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal." Additionally,

[a] sufficient charging instrument serves three constitutional purposes: (1) inform the accused of the charges against him or her so that he or she

---

**6.** Defendant further argues that MACH–CR 24.02.1 "requires the information or indictment to '[3] *[D]escribe property without regard to value, of a specific type listed in Section 570.030.3(3), ....* ' " Section 570.030.3(3) specifically provides for "[a]ny credit card or letter of credit[.]" However, "[e]rror is not established or presumed on the ground that an information did not follow the MACH–CR pattern charge for the offense alleged." *State v. Henderson,* 750 S.W.2d 507, 512 (Mo.App. 1988). Pattern charges are recommended and not required. *State v. Mitchell,* 611 S.W.2d 223, 225 (Mo.1981).

may prepare an adequate defense, (2) prevent retrial on the same charges in case of an acquittal, and (3) inform the court of the facts alleged to determine if those facts as alleged are sufficient, as a matter of law, to withstand motions (such as to dismiss) or support a conviction if one is to be had.

*State v. Kroenung*, 188 S.W.3d 89, 93 (Mo. App.2006) (internal citations omitted).

In its information, the State employed the term "credit device" to describe the property appropriated. Section 570.010(4) defines "credit device" as "a writing, number or other device purporting to evidence an undertaking to pay for property or services delivered or rendered to or upon the order of a designated person or bearer[.]" Definitions under section 570.010 apply to the provisions of Chapter 570. In "COMMENT TO 1973 PROPOSED CODE," paragraph (5), under section 570.010, the definition of "credit device" is discussed, in part, as follows: "It should be clear from this definition that any device evidencing an undertaking to pay for property or services is a credit device. Obviously, this includes such things as a Master Charge or American Express card. It would also include a letter of credit from a bank or an electronic key used to obtain cash from a machine installed to provide such service."[7] Defendant concedes in his brief that the definition of "credit device" includes a credit card.

 "To test the sufficiency of an indictment, we must consider whether it contains all of the essential elements of the statutory offense and clearly informs the defendant of the facts constituting the offense." *State v. Reando*, 313 S.W.3d 734, 741–42 (Mo.App.2010). Reversal is required "only in instances where the indictment [or information] is so defective that by no reasonable construction can it be read to charge the defendant with the offense for which he was convicted." *State v. Hayes*, 88 S.W.3d 47, 55 (Mo.App.2002). "Only if the indictment was so deficient that the defendant was not placed on notice as to what crime he was being charged with, or was so lacking that the defendant was unable to properly prepare a defense will we conclude that such a defendant has suffered actual prejudice." *State v. Logan*, 941 S.W.2d 728, 731 (Mo.App.1997).

Here, the State's information was sufficient to apprise Defendant of the facts constituting the crime charged and to allow him to prepare an adequate defense. Furthermore, the information included all elements necessary to find Defendant guilty of a class C felony of stealing a credit card, and the evidence supported the trial court's conviction on that charge. Rule 23.11 provides that an information that does not prejudice the defendant's substantial rights shall not be held invalid as long as it fully informs the defendant of the offense charged. "The fact that the information stated that [Defendant] was being charged with a *class C* felony (emphasis added) was enough to put [Defendant] on notice that he was being charged with a felony and not a misdemeanor." *State v. Bradshaw*, 643 S.W.2d 834, 836 (Mo.App.1982). There was no prejudice to the defense and no denial of Defendant's substantial rights.

---

7. "When the legislature has adopted a model act, the applicable comments of the drafting committee for the model will often be influential in the interpretation of the language of the statute adopted." *State v. Porter*, 241 S.W.3d 385, 391 (Mo.App.2007). *See also* *State v. Ecford*, 239 S.W.3d 125, 128 (Mo.App. 2007) ("We note that as a general rule, 'comments accompanying a uniform code when adopted have great weight in construing the code.' ") (quoting *In the Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. banc 1996)).

■ Moreover, the nature of Defendant's complaint is directed toward the specificity of the information rather than its sufficiency. Therefore, in the absence of a motion for a bill of particulars, any objection as to the lack of specificity was waived. Rules 23.04; 24.04(b)(2); *State v. Williams*, 611 S.W.2d 26, 31 (Mo. banc 1981). Defendant's second point is denied.

### Sufficient Evidence Supported That Stolen Property was a Credit Card

■ Under his first point, Defendant challenges the trial court's denial of his motion for judgment of acquittal at the close of all the evidence and its finding that he was guilty of felony stealing, "in that the evidence did not prove beyond a reasonable doubt that the debit card [Defendant] stole from the victim was a 'credit card'—the type of property needed under § 570.030.3(3) to have been taken in order to elevate stealing from a misdemeanor to a felony." Defendant essentially challenges the sufficiency of the evidence presented to convict him, in that the State "did not prove beyond a reasonable doubt that the debit card" was a credit card. We do not agree.

Upon appellate review of Defendant's claim, the evidence and all reasonable inferences derived therefrom are viewed in the light most favorable to the State, and contrary inferences are disregarded "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Goebel*, 83 S.W.3d 639, 642 (Mo. App.2002). "In reviewing a challenge to the sufficiency of the evidence, this Court must determine whether there is sufficient evidence from which a reasonable juror could have found [Defendant] guilty beyond a reasonable doubt." *Id.* at 641–42. "In applying this standard, we look to the elements of the crime and consider each in turn." *Id.* at 642. "The elements of an offense are derived from the statute establishing the offense or, where relevant, common law definitions." *State v. Page*, 309 S.W.3d 368, 375 (Mo.App.2010). To support a conviction, there must be sufficient evidence from which a reasonable juror could find each element of the offense beyond a reasonable doubt. *Id.*

Section 570.030.1 provides that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." "'The elements of stealing, as so defined, are: (1) an appropriation; (2) of property or services; (3) of another; (4) with the purpose to deprive the other thereof; and (5) accomplished either without the owner's consent or by deceit or coercion.'" *State v. Presberry*, 128 S.W.3d 80, 91 (Mo. App.2003) (quoting *State v. Chapman*, 876 S.W.2d 15, 17 (Mo.App.1994)).

"If the appropriated property is proven to be a credit card [or letter of credit], the crime of stealing is classified as a class C felony[,]" pursuant to section 570.130.3(3)(c). *Page*, 309 S.W.3d at 375. "If the appropriated property fails to fall under any other section of the stealing statute enumerating specific penalties and is worth under $500, the crime of stealing is classified as a class A misdemeanor. Section 570.030.8." *Id.*

Defendant concedes that "[t]here was more than sufficient evidence that [Defendant] stole the card in question[,]" however, Defendant argues that a debit card, even one extending overdraft protection, is not a credit card and thus "is not covered by the stealing statute." Defendant points to the legislature's failure to include "debit cards" among the property listed in section 570.030.3(3) and the definition of "credit

card" in *Black's Law Dictionary*, which Defendant contends "specifically contrasts it from a debit card." [8]

Here, there was sufficient evidence that the property Defendant appropriated was a credit card. The victim in the underlying case testified that a MasterCard debit card was issued to her and that the card also "had a line of credit" in the amount of $500.00. She further testified that she could use the card "as a debit card with your PIN ... or credit card and your signature." She stated that she usually used the bankcard as a debit card but had utilized it as a credit card, particularly for purchases over the telephone or for internet purchases.

There was also testimony from a customer service manager of the bank that issued the victim's bankcard. She stated that the bankcard was a "debit card or check card" with a $500.00 open line of credit, which meant that the cardholder could access funds that were not in the account up to a $500.00 limit. While there was testimony regarding overdraft protection or privilege, the customer service manager testified that she looked at it as a line of credit and stated that it actually could be used on a monthly revolving basis.

A manager at the Walden Wal–Mart testified that he obtained a detailed store receipt from the transaction attempted at the Walden store, which evidenced a $171.15 credit card transaction authorized by the purported cardholder's signature. Defendant's wife testified that she had no PIN for the card and had to sign the victim's name.

On Defendant's motion for judgment of acquittal, the trial court, as the fact finder, explicitly found that the bankcard at issue was a credit card:

> State proved beyond a reasonable doubt that the card in question was a "credit card" for the purposes of 570.030 RSMo. Although it was called a "bank card" or a "debit card," it, in addition to the common function of a debit card, possessed the functionality of a credit card. Moreover, the State proved that later the same evening as the theft of the card, the Defendant along with [h]is wife treated the card as a credit card by forging a signature rather than using a PIN as is normally required for the use of a debit card.

On appeal, this court accords the finder-of-fact great deference in its superior position to assess the credibility of the witnesses and the weight and value of their testimony. *State v. St. George*, 215 S.W.3d 341, 345 (Mo.App.2007). Upon review, we do not reweigh the evidence. *State v. Edwards*, 280 S.W.3d 184, 189 (Mo.App. 2009). Defendant's claim here is resolved on the basis that the State elicited sufficient evidence that the bankcard at issue was a credit card and, therefore, enhancement to a class C felony as provided under section 570.030.3(3) was applicable. We find that there was sufficient evidence to support the offense charged. Defendant's first point is denied.

---

8. *Black's Law Dictionary* (8th Ed.) provides the following definitions for the terms at issue here. "Credit card" is defined as: "An identification card used to obtain items on credit, usu. on a revolving basis. Cf. Debit Card." *Black's* at 396. "Debit card" is defined as: "A card used to pay for purchases by electronic transfer from the purchaser's bank account. Cf. Credit Card." *Black's* at 431. "Cf." is an abbreviation for the Latin term, *confer*, meaning "Compare." "As a citation signal, *cf.* directs the reader's attention to another authority or section of the work in which contrasting, analogous, or explanatory statements may be found." *Black's* at 243.

## Decision

The trial court's judgment is affirmed.

DON E. BURRELL, P.J. and NANCY STEFFEN RAHMEYER, J., Concur.