**STATE of Missouri, Plaintiff–Respondent,**

v.

**Darel MAXON, Defendant–Appellant.**

**No. 22305.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 15, 1999.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

PREWITT, Judge.

Following jury trial, Defendant was convicted of distributing a controlled substance, Section 195.211, RSMo 1994, and possession of a prohibited weapon, Section 571.020, RSMo 1994. Defendant was sentenced as a prior offender to fifteen years in the Missouri Department of Corrections on Count I, and seven years' imprisonment on Count II. Defendant appeals.[1]

The sufficiency of the evidence is not at issue. There was evidence that on September 27, 1995, with the assistance of a "confidential informant," undercover police officers arranged to purchase one-quarter of a pound of marijuana from two men. The officers, J.D. Collins and Eddie L. Porter, went to Ronnie Hayes' trailer on Route WW in Laclede County. When the officers arrived at the trailer, Hayes, a man known to the officers as Darel or "Max," a female named Diane, and an unknown male were present.

The officers and the informant would not agree to allow Hayes and Max to go alone to pick up the marijuana, so all five left together in the informant's car, with Max driving. Officer Porter and the informant were taken to Frank's Lounge, where they were instructed to stay. After discussion, Hayes and Max agreed that Officer Collins could ride with them, but they would not allow him to go to the

---

1. The written Sentence and Judgment does not specify whether the sentences of imprisonment are to run concurrently or consecutively; nor was there an oral pronunciation at the sentencing hearing in this regard. The sentences, therefore, are to run concurrently. § 558.026.1, RSMo.1994.

house of their "source." Officer Collins waited for them in a patch of woods while they obtained the marijuana.

When Hayes and Max returned with a bag containing marijuana, Collins negotiated with them, resulting in a price of $450.00. Collins gave Hayes the money, and Hayes and Max left to pay their source. They returned a few minutes later, picked up Collins and Porter, and returned to Hayes' trailer. It earlier had been agreed that Hayes and Max would receive one-quarter of an ounce of the marijuana as a "gratuity" for making the deal, but the officers attempted to persuade them to accept cash instead. The men would not agree. Using a set of postal measuring scales, Max extracted one-quarter of an ounce of marijuana from the bag, and then returned the bag to Collins.

Collins testified that as the officers were about the leave the trailer, Max asked Porter if he was interested in buying a stainless steel nine millimeter pistol. Hayes and Max also said they had a sawed-off shotgun for sale. The officers expressed an interest in purchasing the guns at a later date.

On October 3, 1995, Officer Porter called Hayes and was told that the guns were available. The officers went to Hayes' trailer that day. Hayes, Max, Diane, and other unknown people were in the trailer, including a man named Darrell who was sitting on a sofa with Diane. From a bedroom, Max produced a green canvas bag with two sawed-off shotguns. Max apologized for having previously sold the nine millimeter pistol. Porter conversed with Max about the guns and verified that the shotguns were functional. Porter agreed to the offer made by Max of $30.00 for each gun. Porter wanted to keep the canvas bag as well, and Hayes agreed to that. Measuring revealed that one of the shotguns had a barrel length of 13¼ inches, and an overall length of 23⅞ inches.

■ One issued raised at trial was whether "Max" was the Defendant, Darel Maxon. Defense counsel argued that the officers had identified the wrong man, and that the other Darrell could have been the man with whom the officers dealt. This issue is raised in Appellant's first point. He argues that the charges should have been dismissed due to late disclosure of "potentially exculpatory evidence." The morning of the second day of trial, the prosecutors provided Appellant with a copy of a report of an interview with Diane Langdon, the "Diane" who had been present in the trailer. In that report, Diane identified the other Darrell as Darrell Campbell. Appellant claimed that the failure of the prosecutor to earlier disclose this report violated his right to due process, in that Darrell Campbell matched the physical description of the "Darel" involved in illegal activities as described in Officer Porter's report.

■ The prosecution has an affirmative duty to disclose exculpatory evidence. *State v. Calvert*, 879 S.W.2d 546, 548 (Mo. App.1994), *citing Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the State cannot be faulted for nondisclosure if the defendant had knowledge of the evidence at the time of trial. *Calvert*, 879 S.W.2d at 548.

■ If disclosure is required, a new trial will be granted only when the undisclosed evidence is material. *Hayes v. State*, 711 S.W.2d 876, 879 (Mo.banc 1986). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding might have been different. *Id.See also State v. Phillips*, 940 S.W.2d 512, 516–17 (Mo.banc 1997).

Prior to trial, Appellant subpoenaed Darrell Campbell's records from the Department of Corrections. It is apparent that Appellant knew the identity and the present location of the other Darrell before receiving the report of the interview. Additionally, the jury was made aware of

the presence of another Darrell in the trailer as it was brought out during cross-examination of Officer Porter, during presentation of Appellant's own case, and in closing argument.

Because the issue of identity was raised at the trial, and Appellant obviously knew of Darrell Campbell when he subpoenaed Campbell's prison records, we cannot say that the result of the proceeding might have been different if the report had been timely disclosed to Appellant. Point I is denied.

■ For his second point, Appellant alleges trial error by allowing a jury instruction to be submitted on accessory liability when the Information charged him as a principal. It is proper, however, to submit to the jury a theory of accomplice liability despite charging the defendant as a principal. *State v. Isa,* 850 S.W.2d 876, 898 (Mo.banc 1993). *See also State v. Friend,* 936 S.W.2d 824, 827 (Mo.App.1996). Point II is denied.

The judgment is affirmed.

GARRISON, C.J., and BARNEY, J., concur.