STATE of Missouri, Respondent,

v.

Billy COOK, Appellant.

No. ED 93066–01.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 5, 2011.

Leah Garabedian, Susan K. Roach, Melissa A. Featherston, Clayton, MO, for Appellant.

Chris Koster, Attorney General, Shaun J. Mackelprang, James B. Farnsworth, Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Billy Cook ("Defendant") appeals from the judgment of conviction by a jury of one count of child molestation in the first degree, Section 566.067, RMSo 2000,[1] two counts of statutory sodomy in the first degree, Section 566.062, and one count of statutory sodomy in the second degree, Section 566.064, for which he was sentenced to a total of thirty-two years of imprisonment. We affirm.

Defendant challenges the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdicts, the following evidence was presented at the trial. From August 23, 2001 to August 23, 2002, the victim, then eleven years old, lived in Imperial, Missouri with her mother, her three younger half-siblings, and Defendant, her step-father. While they were living at the residence in Imperial, Defendant sexually abused the victim for the first time. While victim's mother was at work and her younger half-siblings were outside playing, Defendant called the victim into his bedroom. Defendant told the victim to sit down on the bed. She sat down, and Defendant stood beside her. Defendant took off his pants. Defendant took the victim's hand and placed it on his erect penis. Defendant said, "This is what I want you to do," and moved her hand up and down on his penis. After a few minutes, the victim stopped.

In the summer of 2003, the victim, then thirteen years old, and her family moved

---

1. All further statutory references are to RSMo 2000.

to Arnold, Missouri. While living in Arnold, Defendant continued to force the victim to masturbate him. In addition, when Defendant had the victim alone in his bedroom, he touched her vagina with his hands. Defendant told the victim not to tell anyone what was happening.

In September of 2005, the Defendant told the victim, then fifteen years old, that he needed to talk to her in his bedroom. When the victim entered the bedroom, Defendant told her to remove her pants and underwear and lie down on the bed. The victim complied, and Defendant told her to "be quiet" and he inserted his fingers into her vagina.

At the trial, Defendant argued the victim was a liar and had fabricated the allegations so she could live with her biological father. Defendant testified that he had never had any sexual contact with the victim. Defendant further testified that in the seventeen years that he had known the victim, he had never been alone in the house with her.

The jury subsequently found Defendant guilty of one count of child molestation, two counts of fist-degree statutory sodomy, and one count of second-degree statutory sodomy. The trial court sentenced Defendant to fifteen years' imprisonment for the child molestation count, twenty-five years' imprisonment for each of the first-degree statutory sodomy counts, to run concurrent with each another, and seven years' imprisonment for the second-degree statutory sodomy count, to run consecutive to the other sentences, for a total of thirty-two years of imprisonment.

Defendant did not file a motion for new trial. Defendant subsequently filed a di-

rect appeal. While the appeal was pending, Cook filed a motion to remand to the trial court for the purpose of hearing a motion for a new trial based on newly discovered evidence. Cook attached an affidavit of the victim recanting her testimony against Cook.[2] We granted Cook's motion in light of *State v. Terry,* 304 S.W.3d 105 (Mo. banc 2010), and *State v. Mooney,* 670 S.W.2d 510, 515–16 (Mo.App. E.D. 1984), and remanded to the trial court to determine whether the recanting occurred under circumstances reasonably free from suspicion of undue influence or pressure from any source. *State v. Cook,* 307 S.W.3d 189, 192–93 (Mo.App. E.D.2010). In the interim, all proceedings on Defendant's appeal were stayed. *Id.* at 193.

Upon remand, the trial court held a hearing on the motion for a new trial. The trial court denied Defendant's motion for a new trial. We now address the pending claims on appeal and the supplemental claim of error alleged against the trial court for denying the motion for a new trial.

█ In his first point, Defendant contends the trial court erred "in permitting the State to violate the Missouri Supreme Court Rules of discovery and the constitutional right to due process in that the State failed to provide [Defendant] with a video taped interview of the [victim] and the court, upon learning of this fact, made no remedy." We disagree.

After the case was submitted to the jury for deliberation, the following exchange took place:

[DEFENSE COUNSEL]: Yesterday while we were in chambers—I think it

---

2. The affidavit, signed by the victim, read as follows:

I [the victim] am recanting the statement I said about Billy Cook. He did not sexually abuse me in any way. At the time the statement was made I was angry and upset. I was 15 years old and wanted to punish Billy for reasons I do not remember. I did not understand exactly what was going on. I did this on my own and was not forced.

was yesterday. It could have been Monday. But I was notified that there was a video tape of the interview with [the victim], at some point. I don't know if it was DFS or the prosecutor.

[THE PROSECUTOR]: Your Honor, I would note for the record that he was provided with the Child Advocacy report.

[DEFENSE COUNSEL]: I did get that; which was a report, which was a summary of the interview. But I did not get an opportunity to see the actual—

THE COURT: Well, that was mentioned during the course of the trial. Right?

[THE PROSECUTOR]: That was mentioned in chambers.

THE COURT: In chambers. All right.

[DEFENSE COUNSEL]: So, whether that would have had any value I don't know since I never saw it.

THE COURT: Your comment is noted. Put it that way. Your [ ] jury is deliberating now.

Defense counsel did not make any objection, request, or motion regarding the videotape. The videotape was not played or produced at the trial or made part of the record. In addition, Defendant did not file a motion for a new trial asserting grounds of error regarding the videotape.

Defendant asserts the failure of the State to provide the video tape of the victim's interview was in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 25.03 and asserts the trial court failed "to provide a remedy."

■ Defendant's claim was not preserved for review. To preserve a claim for appellate review, the appellant is required to make an objection at the trial, and raise the same objection in his motion for new trial. *State v. Chambers*, 234 S.W.3d 501, 512 (Mo.App. E.D.2007). Defendant did not make an objection at the trial claiming a *Brady* violation or violation of the discovery rules. In addition, Defendant did not file a motion for new trial on those grounds. Thus, Defendant's claim is not preserved for appellate review. We may, however, review for plain error pursuant to Rule 30.20. To be entitled to reversal on a claim of plain error, a defendant bears the burden of demonstrating that the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Broom*, 281 S.W.3d 353, 358–59 (Mo.App. E.D.2009).

■ Here, there is no plain error. First, there is no *Brady* violation. According to *Brady*, due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. More importantly, *Brady* applies only to those situations where the defense discovers information after the trial that the prosecution knew at the trial. *State v. Bynum*, 299 S.W.3d 52, 62 (Mo.App. E.D.2009). Here, Defendant knew of the interview with the victim prior to the trial when he was provided the Child Advocacy report and learned of the videotape while the jury was deliberating. Furthermore, the videotape was not made part of the record. Defendant did not request production of the videotape on the record or ask for a continuance to view the videotape to determine whether its content was material, exculpatory, or useful for impeachment purposes.

■ Defendant also asserts a violation of Rule 25.03, which provides, in pertinent part:

(A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

(1) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;

Defendant did not request sanctions for a violation of the discovery rule. Moreover, once "surprise" has occurred upon discovery of undisclosed evidence "the proper remedy is to request a continuance or postponement." *Bynum*, 299 S.W.3d at 62.

To the extent Defendant asserts the trial court should have *sua sponte* provided a remedy, we cannot say these were exceptional circumstances in which such action was required. Trial judges are not expected to assist counsel in trying cases and should act *sua sponte* only in exceptional circumstances. *State v. Francis*, 60 S.W.3d 662, 671 (Mo.App. W.D. 2001). "A trial court will not be faulted for failing to take corrective action, when that action is not requested." *Id.* We cannot convict the trial court of error under the circumstances where no relief was requested at the trial. Point denied.

In his second point, Defendant claims the trial court erred in denying his motion for judgment of acquittal at the close of the State's case and at the close of all the evidence because there was insufficient evidence to support his convictions. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Stallman*, 289 S.W.3d 776, 778 (Mo.App. E.D.2009). We consider the evidence and all reasonable inferences reasonably drawn therefrom in the light most favorable to the verdict, and disregard all evidence and inferences to the contrary. *Id.* When reviewing the sufficiency of evidence supporting a criminal conviction, this court does not act as a "super juror" with veto powers but should give great deference to the trier of fact. *State v. Williams*, 277 S.W.3d 848, 852 (Mo.App. E.D.2009). As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony. *Id.* at 853; *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

A person is guilty of first-degree child molestation if he "subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1. "Sexual contact" is statutorily defined, in relevant part, as "any touching of another person with the genitals ... for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3). At the trial, the victim testified that when she was eleven years old, Defendant forced her to put her hand on his penis and masturbate him. This act constituted sexual contact and therefore, there was sufficient evidence to find Defendant guilty of first-degree child molestation.

A person is guilty of first-degree statutory sodomy if he "has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062. "Deviate sexual intercourse" is "any act involving the genitals of one per-

son and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument, or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1). At the trial, the victim testified that when she was thirteen years old, Defendant forced the victim to masturbate him. The victim also testified when Defendant had the victim alone in his bedroom, he touched her vagina with his hands. These acts, involving the genitals on one person and the hands of another for the purpose of Defendant's sexual arousal or gratification, constituted deviate sexual intercourse. Therefore, because the victim was less than fourteen years old, there was sufficient evidence to find Defendant guilty of two counts of first-degree statutory sodomy.

■ A person commits second-degree statutory sodomy if he is at least twenty-one years old and "has deviate sexual intercourse with a person who is less than seventeen years of age." Section 566.064. At the trial, the victim testified that when she was fifteen years old, Defendant inserted his fingers into her vagina. This act constituted deviate sexual intercourse because it involved Defendant's hand and the victim's genitals, and because it involved the penetration of the victim's genitals with Defendant's fingers. Thus, there was sufficient evidence to find Defendant guilty of one count of second-degree statutory sodomy.

Defendant does not deny that the victim's testimony, if believed, was sufficient to support his guilty convictions. Instead, Defendant asserts the victim's testimony was "inherently improbable and unworthy of credence." Defendant maintains the "corroboration rule" required that the victim's unbelievable testimony be corroborated by other evidence.

■ The general rule is that a criminal conviction may be sustained by the victim's testimony alone, even if that testimony is uncorroborated. *State v. Baker*, 23 S.W.3d 702, 709 (Mo.App. E.D. 2000). An exception, called the "corroboration rule," comes into play in the particular context of sexual offense cases. *Id*. "Corroboration is mandated only when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful such that corroboration of the victim's testimony is required to sustain the conviction." *Id*. The rule is not applied merely because the testimony of the victim includes inconsistencies or contradictions as to minor points of a nonessential nature. *Id*. To put it another way, the corroboration rule does not apply to inconsistencies not sufficient to make "the testimony inherently self-destructive." *State v. Miller*, 250 S.W.3d 736, 745 (Mo.App. S.D.2008). "Discrepancies must be gross inconsistencies and contradictions and must relate directly to essential elements of the case." *Id*. Conflicts of nonessential nature and issues regarding the credibility of witnesses are matters for the jury to determine. *Baker*, 23 S.W.3d at 709.

■ Here, Defendant asserts three aspects of the victim's testimony that he thinks render her testimony unbelievable. First, he points out that even though the victim regularly visited her biological father during the time period of the abuse, she never told her father what was happening. Second, Defendant notes that the victim's household was a busy place, yet "no one witnessed any of these acts over the course of four years." Thirdly, Defendant cites to the victim's testimony that her half-siblings were playing outside

when the abuse occurred. Defendant asserts "it is inherently improbable and unlikely that children of that young age were outside playing together unsupervised in the neighborhood."

We find the application of the corroboration rule was not warranted under the circumstances. First, the testimony alluded to by Defendant does not involve inconsistencies or contradictions and thus, the victim's trial testimony was not inherently self-destructive so as to trigger the corroboration rule. Second, the aspects of the victim's testimony cited by Defendant do not relate to essential elements of the case. The testimony only relates to nonessential issues, and would have been properly considered by the jury in making its credibility determinations.

The trial court did not err in denying his motion for judgment of acquittal at the close of the State's case and at the close of all the evidence because there was sufficient evidence to support Defendant's convictions. Point denied.

■ In his point raised after remand, Defendant asserts the trial court abused its discretion in denying Defendant's motion for new trial because the victim testified that she fabricated the allegations of sexual abuse. We disagree.

At the hearing upon remand, Defendant presented the testimony of the victim. The victim testified she made the allegations of abuse against Defendant because she thought by making the allegations she would be removed from the house and would be sent to live with her biological father. The victim testified that she had been angry with Defendant because he treated her differently than he treated her half-siblings and because he had told the victim's mother that the victim had sex with a boy. The victim testified that she did not realize until the trial that Defendant would go to prison as a consequence of her allegations.

The victim identified the written recantation as her own statement. She testified that she had been alone at her home when she wrote the recantation and that her mother had not asked her to write the statement or any similar statement. The victim acknowledged that her mother had taken her to have the statement notarized. The victim denied that her mother helped her "rewrite" the statement. The victim testified that she was willing to recant her allegations, despite the risk of being charged with perjury, because she now has a daughter of her own and thinks that it is "not right" for Defendant to be separated from his children.

In response, the State played a series of audio-recorded phone calls that Defendant had made from prison to his wife, the victim's mother. They were aware that the calls were not private; a message played at the beginning of each call that reminded them that the calls were monitored and recorded, and Defendant and his wife occasionally mentioned during the calls their reluctance to say much over the phone.

The first call played took place approximately one month after Defendant's sentencing hearing. During this call, Defendant said to his wife, "Don't let [the victim] see the kids, you know, until she—I mean, because these phone calls are being recorded I don't want to say too much." At the end of the call, Defendant instructed, "Just remember whenever you talk to [the victim], you know what I'm saying." His wife responded, "Right, I know."

In another call the next day, Defendant's wife told Defendant how much their three youngest children missed him. Defendant said, "That's what I said in that letter. [The victim] needs to come down and [the kids] needs [sic] to pout really,

really super hard how bad they miss their dad, you know?" Defendant also said he wanted the victim to talk to the prosecutor and see if he could get his sentence "dropped down below ten years." Defendant's wife told Defendant, "I'm getting closer. I know, babe. I'm going to talk to her." Defendant concluded the call, saying, "You know what to say to [the victim]."

A week later, during a phone call, Defendant's wife told Defendant that she had spoken with the victim and that the victim refused to change her statement. Defendant's wife assured Defendant that she was "trying" and "doing the best [she] can."

During another call, Defendant expressed his disbelief that his wife was still "talking to [the victim]." His wife responded, "Well, at the beginning you told me to." Defendant said, "Yeah, well, I thought maybe she might change her mind after she wrote that letter saying she only wanted to get five years." Defendant's wife stated that she would talk to the victim later in the week and tell her that "we need to do something for [Defendant]." Defendant told his wife that her "family needs to jump on [the victim's] ass."

During another call, Defendant's wife told Defendant one of their sons was sad because he wanted Defendant to come home. Defendant responded, "[The victim] needs to see that." His wife assured Defendant that the victim had seen it. Defendant answered, "But she needs to see it again and again and again. It needs to be rubbed in her face."

In a call recorded two days before the victim wrote her recantation, Defendant's wife told Defendant that she had spoken to "her" and knows where she needs to go to get papers notarized. Defendant reminded his wife, "[Y]ou also need to put in

there somewhere that we are not telling her what to do. We are not blackmailing her." His wife responded, "Baby, I know that already."

On the day the victim wrote her recantation, Defendant's wife spoke to Defendant on her way home from the bank, after taking the victim to have her recantation notarized. She told Defendant that when she was with the victim they had to "rewrite" her statement, so the victim could add that "[they] weren't forcing her writing this." Defendant's wife was hesitant to describe what happened with the statement, noting that she was "trying not to say too much over the phone." Nevertheless, Defendant's said the following:

> [DEFENDANT]: Right, so how long did it take you—how long did it take you to rewrite that—rewrite everything?
>
> [DEFENDANT'S WIFE]: Five times.
>
> [DEFENDANT]: Huh?
>
> [DEFENDANT'S WIFE]: Five times.
>
> [DEFENDANT]: Five times?
>
> [DEFENDANT'S WIFE]: Five times.
>
> [DEFENDANT]: Why—why so many?
>
> [DEFENDANT'S WIFE]: Because she kept messing up.
>
> [DEFENDANT]: Hm, I see.
>
> [DEFENDANT'S WIFE]: You know, I mean, I can't write it for her.
>
> [DEFENDANT]: No. That's true. You can't.

At the State's request, the trial court also took judicial notice of the transcripts from the trial and the sentencing hearing.

 The trial court has substantial discretion in ruling on a motion for a new trial based upon newly discovered evidence, and we will not disturb its decision absent an abuse of discretion. *State v. Rutter*, 93 S.W.3d 714, 730 (Mo. banc 2002). The trial court abuses its discretion when its ruling is clearly against the logic

of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Smith,* 181 S.W.3d 634, 638 (Mo.App. E.D.2006).

Where a defendant seeks a new trial based upon the post-trial recantation of the complaining witness, the trial court should not grant a new trial unless it finds that "the recanting occurred under circumstances reasonably free from suspicion of undue influence or pressure from any source." *Mooney,* 670 S.W.2d at 516. On review of denial of motion for new trial based upon newly discovered evidence, we defer to trial court's superior position from which to determine credibility. *State v. Garner,* 976 S.W.2d 57, 60 (Mo.App. W.D. 1998). If the trial court is not satisfied that a witness's post-trial testimony is credible, it is the trial court's duty to deny a new trial. *Id.*

Here, the trial court did not abuse its discretion in denying Defendant's motion for new trial based upon the victim's recantation and in finding the victim's recantation was not made under circumstances reasonably free from undue influence or pressure. As illustrated by the audio-recorded phone calls between Defendant and his wife, the circumstances of the victim's recantation were not reasonably free from undue influence or pressure. The phone calls provided evidence that Defendant's wife, at Defendant's direction, worked on the victim for several months in an effort to persuade or pressure the victim to make a statement that would either exonerate Defendant or seek leniency on his behalf. In the phone calls, Defendant told his wife to not let the victim see her half-siblings, but also instructed his wife to let the victim see the children crying and pouting about how much they missed their father. The phone calls indicated Defendant and his wife were involved in the victim's re-cantation. Defendant instructed his wife to make sure the statement included language that they were "not telling her what to do" or "blackmailing her." Defendant's wife stated in a phone call that she helped the victim rewrite the statement five times because she "kept messing up." Furthermore, as noted by the trial court, neither Defendant nor his wife states the victim lied about the sexual abuse allegations in any of the phone calls.

Defendant asserts that nothing in the phone calls indicates that Defendant or his wife pressured the victim to lie, but only that they were trying to persuade her to "rectify a wrongful conviction." Defendant's argument, however, is not persuasive. The trial court heard all of the evidence and the victim's post-trial testimony, in which she said her mother did not help her write the recantation and her mother clearly stated in a phone call that she helped the victim rewrite the statement. The trial court did not find the victim's recantation testimony credible and we must defer to trial court's determination.

The trial court's finding that the victim's recantation was not made under circumstances reasonably free from suspicion of undue influence or pressure is not against the logic of the circumstances. The trial court did not abuse its discretion in denying Defendant's motion for a new trial. Point denied.

For the foregoing reasons, the judgment is affirmed.

SHERRI B. SULLIVAN, P.J. and PATRICIA L. COHEN, J., concur.