**STATE of Missouri, Plaintiff–Respondent,**

v.

**Daniel Lee PHERIGO, Defendant–Appellant.**

**No. SD 31477.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 7, 2012.

694

Emmett D. Queener, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Emmett D. Queener, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, P.J.

Daniel Lee Pherigo ("Defendant") was found guilty by a jury of second-degree burglary, in violation of section 569.170, RSMo 2000, first-degree tampering with a motor vehicle, in violation of section 569.080, RSMo Cum.Supp.2005, and stealing a credit card, in violation of section 570.030, RSMo Cum.Supp.2009. The trial court sentenced Defendant to serve consecutive terms of fifteen years, ten years, and ten years in prison, respectively. Defendant appeals, arguing that (1) the trial court abused its discretion in overruling his motion for new trial based on the State's late disclosure of three recorded statements, and (2) there was insufficient evidence to support his stealing conviction because the State failed to prove that the credit card he stole accessed an active account. We disagree and affirm the trial court's judgment.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, *State v. Bescher*, 247 S.W.3d 135, 137 (Mo.App.2008), the following facts were adduced at trial.

Rex and Carol Malson lived at 189 Sherwood Drive in Branson. They went on vacation during September 2010.

·On September 29, 2010, Deputy Donald Piveral of the Taney County Sheriff's Department received a report of a burglary at the Malsons' home. When he arrived at the scene, the front door and garage door of the residence were open. Items in the home were strewn about. Deputy Piveral photographed the scene, secured the residence, and left. Later, he determined that a silver Mercedes had been taken from the home.

The next day as he was on his way to another investigation, Deputy Carl Pride, also of the Taney County Sheriff's Department, noticed a silver Mercedes that matched the description of the one missing from the Malsons' home. The trunk was open, and two people were standing outside the car. He notified Detective Roger Ellis, who responded to the location. As he arrived, Detective Ellis saw Defendant transfer two backpacks from the silver Mercedes to a red BMW parked nearby. Detective Ellis approached Defendant and asked if Defendant had any identification. Defendant asked what the problem was. Detective Ellis told Defendant that the vehicle had been reported stolen. Defendant reached into a blue backpack, and Detective Ellis "told him he better come out with his ID and nothing else." Defendant "put his hands in the air and said 'it's not worth it.'" Detective Ellis handcuffed Defendant and sat him on the ground. Defendant's companion, who was still sitting in the driver's seat of the Mercedes, identified herself as Teresa Buckner. Defendant told officers that Buckner had borrowed the car from a man named Matt and that she had told Defendant to take the bags from the Mercedes and put them in the BMW.

Detective Ellis seized the backpacks. There were no identification documents for Defendant in the backpacks. One of the backpacks did contain a pair of gloves, a loaded pistol, and an American Express credit card with Carol Malson's name on it. The officers took the Mercedes back to the sheriff's department to inventory it. They found personal papers belonging to the Malsons in plain view in the backseat of the car.

At trial, the Malsons testified that they had not given Defendant permission to

have possession of their car. Carol Malson also said she did not give Defendant permission to possess her credit card. The jury found Defendant guilty of burglary, tampering, and theft of a credit card. This appeal followed.

## Discussion

### Defendant failed to introduce evidence to support the Brady claim in his motion for new trial and suffered no prejudice in any event.

In his first point, Defendant claims the trial court abused its discretion in denying his motion for new trial based on the State's failure to timely disclose recorded statements to the police made by Teresa Buckner, Andrew Larned, and Andrew Burton. He relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the purported factual support for this argument comes from statements his attorney made during the hearing on the motion for new trial.[1]

On the first morning of trial, before voir dire began, the prosecutor, when asked about other pretrial matters, told the judge that on the Friday before trial at about five minutes until five o'clock, he received a "few disks that contained interviews of codefendants and two of the defendant[.]" He explained that there were references in the police reports to the recorded interviews and that he had left a voice mail for defense counsel about the matter. The prosecutor provided copies of Defendant's recorded statements to the defense that morning and offered to provide copies of the recordings of the codefendants' statements. He emphasized that "it was not the intention of the State to withhold those." The judge asked for comment from the defense, and defense

counsel responded that he had no reason to dispute the State's characterization of the situation but said, "I have what he gave me and don't have what he hasn't given me[.]" The parties moved on to other matters and returned to the disclosure issue after voir dire was complete. Defendant's attorney objected to any use of Defendant's recorded statements to the police. The prosecutor said that he was not planning to use any of the recordings of the statements made by Defendant in the State's case-in-chief because of the untimely disclosure. Defense counsel responded:

> Well, judge, I'd just—I mean I'd be satisfied with the exclusion of . . . interviews by any law enforcement officer of my client . . . [that] . . . hadn't been disclosed. Uh, I know there was one at the scene of the arrest. I know to that.

> In terms of the ones that I got videos of this morning and this supplemental report that I got at . . . 2:15 p.m. on day one of the trial. . . . I think those . . . should be something that the State be prohibited from going into.

The prosecutor responded that he misunderstood the nature of defense counsel's objection. The judge responded that it "[s]ounds like we got that all resolved[,]" and the trial began.

During trial, the defense theory of the case was that someone else committed the crime. In opening statement, defense counsel told the jury that the evidence would show that the burglary was committed by Larned. Counsel also told the jury about two traffic tickets Larned received for speeding in the Mercedes two days before Defendant's arrest and the fact that Defendant was not seen driving the Mer-

---

1. Defendant also cites Rule 25.03. However, this basis for disclosure was not raised in his motion for new trial, and as such, that argu-

ment is not preserved. *See State v. Moore*, 252 S.W.3d 272, 276 (Mo.App.2008). We decline to address it.

cedes. He also mentioned Buckner's involvement. During the State's case-in-chief, defense counsel cross-examined the arresting officers regarding whether they saw Defendant driving or sitting in the Mercedes. During the cross-examination of Detective Ellis, defense counsel introduced evidence that Larned had sold some of the items that had been taken from the Malsons' home. After the State rested, defense counsel introduced two traffic tickets showing that the Mercedes had been driven by Larned two days before Defendant was seen with the car. Defense counsel's closing argument emphasized these facts and suggested to the jury that Larned was the true culprit.

In Defendant's motion for new trial, his tenth claim involved the State's failure to disclose the co-defendants' recorded statements. That claim read, in full:

> On October 29, 2010, the Defendant had filed with the Court and served upon the State his Request For Discovery. The State violated its discovery obligations to the Defendant by failing to timely disclose materials relevant to the defense and covered by the Request For Discovery until April 5, 2011, after verdict. On said date the State disclosed three DVDs. One contained a law enforcement interview of co-Defendant Teresa Buckner, concerning the charged offenses on December 14, 2010. The second contained a law enforcement interview of co-Defendant Andrew Larned, concerning the charged offenses on December 9, 2010. The third contained a law enforcement interview of Andrew Burton, a potential witness and jail house informant, concerning the charged offenses on November 21, 2010. The failure to disclose violated the State's obligations under *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963) and *Kyles v. Whitely* [*Whitley*], 514 U.S. 419 [115 S.Ct.

1555, 131 L.Ed.2d 490] (1995) in that the material tends to negate the guilt of the defendant, or mitigate the degree of the offense charged, or reduce punishment. This was a violation of defendant's rights to due process, a violation of the defendant's right to confront and to cross-examine the witnesses against him, a violation of the defendant's right to effective assistance of counsel, and a fair trial as protected by Article I, Sections 10 and 18(a) of the Missouri Constitution and the 5th, 6th and 14th Amendments to the United States Constitution.

At the hearing on the motion for new trial, defense counsel stated that he had not received copies of the videos until after the trial. Then he stated, "I assume there's not necessarily a factual issue requiring an evidentiary hearing. Um, the State disagrees about kind of what I—what I feel are contained on there and perhaps we need to have an evidentiary hearing." He went on to describe each of the videos. As related to the trial court by defense counsel, Larned said he had made four trips to the Malson home with two other individuals but that Defendant and Buckner were not with him during any of those trips. Defense counsel then explained that Buckner told police she received the Mercedes from Larned, and she believed it belonged to Larned. She also thought that the paperwork with the Malsons' names belonged to Larned's deceased mother "and he just hadn't had an opportunity to clean out the vehicle." Defense counsel stated that in the third video Andrew Burton admitted selling some of the Malsons' belongings at a pawn shop.

The prosecutor responded that the arguments supported by those facts had been made at trial. Defense counsel admitted he had received the police reports but protested that the reports did not "go into

the detail obviously that the video interviews go into." The prosecutor added that he gave the videos to the defense as soon as they were available to the State and further stated, "I don't think the things that [defense counsel] says are exculpatory actually are." The trial court overruled the motion but gave the prosecutor a stern warning regarding "this consistently late discovery issue."

## Standard of Review

■ "The trial court's decision whether to grant a motion for new trial is presumed correct and will be reversed only when an abuse of discretion has occurred." *State v. Peeples*, 288 S.W.3d 767, 775 (Mo. App.2009). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

## Analysis

■ Defendant's claim must be denied because he failed to introduce any evidence to support it at the trial level. The allegations in a motion for new trial are not self-proving. *Id.; State v. Pence*, 428 S.W.2d 503, 506 (Mo. banc 1968) ("It is well settled that factual allegations in a motion for new trial do not prove themselves"). Thus, a trial court does not abuse its discretion in denying a motion for new trial based on facts not appearing of record where the defendant has not supported the motion for new trial with affidavits or testimony. *State v. Lewis*, 785 S.W.2d 656, 660 (Mo.App.1990); *State v. Davis*, 698 S.W.2d 600, 603 (Mo.App. 1985). In the present case, Defendant adduced no proof in support of his argument that the recorded interviews were exculpatory. Even after the prosecutor disagreed

with defense counsel about the exculpatory nature of the recordings, defense counsel made no request to have the recordings made part of the record. Without evidence upon which to base a decision, the trial court did not abuse its discretion when it denied Defendant's motion for new trial on the ground that the State had failed to make the necessary disclosures.

■ Even if evidence had been adduced that supported defense counsel's characterization of the videos, it is clear that Defendant was not prejudiced by the untimely disclosures because he was aware from other sources of the nature of the information in the recordings and used that information in his defense. "According to *Brady*, due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *State v. Cook*, 339 S.W.3d 523, 527 (Mo.App.2011). "A *Brady* violation occurs if: (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the state either willfully or inadvertently; and (3) the suppression must have prejudiced the defendant." *State v. Goodwin*, 43 S.W.3d 805, 812 (Mo. banc 2001) (citing *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). "The requirements of *Brady* are designed to guarantee a fair trial and to prevent wrongful convictions. The real question is whether these failings prejudiced the defense." *State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992).

■■ "Evidence is material if there is a reasonable probability that had the evidence been disclosed to the defense, the result would have been otherwise." *Goodwin*, 43 S.W.3d at 812. "More importantly, *Brady* applies only to those situations where the defense discovers information after the trial that the prosecution knew at the trial." *Cook*, 339 S.W.3d at 527.

Thus, where the defense knows of the evidence at the time of trial and uses a different avenue to place that information before the jury during the trial, appellate courts will not reverse on the basis of an alleged *Brady* violation. *See id; Whitfield,* 837 S.W.2d at 508. For example, in *State v. Maxon,* the police conducted a controlled buy of a controlled substance from the defendant. 5 S.W.3d 613, 615 (Mo.App.1999). Another man with the same first name as the defendant was present at the location of the transaction. *Id.* During preparation for trial, the defense attempted to locate information about the other man. *Id.* On the morning of trial, the State disclosed a report from a witness who identified the other man as the culprit. *Id.* When the defendant claimed that a *Brady* violation resulted from the late disclosure of the report of the witness, the appellate court disagreed, pointing out that the defendant knew about the information from another source and even presented the information to the jury through his cross-examination of the officer and his closing argument. *Id.*

Here, similarly, Defendant knew of the information and used other evidence to present it to the jury at trial. The defense at trial focused on shifting the blame to Larned and Buckner. Defense counsel cross-examined the arresting officers to establish that Defendant had not driven the stolen vehicle and that Larned had pawned some of the victims' belongings. He also introduced records showing that Larned had driven the Mercedes two days before Defendant was arrested. During discussion of the motion for new trial, defense counsel admitted that he had been provided reports which mentioned the interviews of these witnesses. Defendant knew of the information prior to trial and used it to assist in his defense. Thus, Defendant was not prejudiced by the State's late disclosure of the recorded interviews. Defendant's first point is denied.

## The evidence was sufficient to support the conviction for stealing a credit card.

In his second point, Defendant argues that there was insufficient evidence to support his conviction for the class C felony of stealing a credit card because there was no evidence "that the American Express credit card could access a line of credit[.]" We disagree.

### Standard of Review

■ When reviewing a claim that the evidence is insufficient to support the verdict, the evidence and all reasonable inferences derived therefrom are viewed in the light most favorable to the State, and contrary inferences are disregarded "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Goebel,* 83 S.W.3d 639, 642 (Mo. App.2002). Viewing the evidence in this light, "this Court must determine whether there is sufficient evidence from which a reasonable juror could have found [Defendant] guilty beyond a reasonable doubt." *Id.* at 641–42. "In applying this standard, we look to the elements of the crime and consider each in turn." *Id.* at 642. "The elements of an offense are derived from the statute establishing the offense or, where relevant, common law definitions." *State v. Page,* 309 S.W.3d 368, 375 (Mo. App.2010). To support a conviction, there must be sufficient evidence "from which a reasonable juror could find each element of the offense beyond a reasonable doubt." *Id.*

### Analysis

■ Section 570.030.1, RSMo Cum. Supp.2009, provides that "[a] person com-

mits the crime of stealing if he or she appropriates the property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." *Id.* " 'The elements of stealing, as so defined, are: (1) an appropriation; (2) of property or services; (3) of another; (4) with the purpose to deprive the other thereof; and (5) accomplished either without the owner's consent or by deceit or coercion.' " *State v. Presberry,* 128 S.W.3d 80, 91 (Mo.App.2003) (quoting *State v. Chapman,* 876 S.W.2d 15, 17 (Mo.App. 1994)). "If the appropriated property is proven to be a credit card, the crime of stealing is classified as a class C felony." *Page,* 309 S.W.3d at 375; *see also* section 570.030.3(3)(c).

Defendant contends that there was insufficient evidence that the card in question could access a line of credit and therefore the item could not be considered a credit card for the purpose of conviction of a class C felony as opposed to a class A misdemeanor. This argument requires us to construe the meaning of "credit card" for purposes of section 570.030.3(3)(c).

" 'Statutory interpretation is an issue of law which this court reviews *de novo.*' " *State v. Lewis,* 188 S.W.3d 483, 486 (Mo. App.2006) (quoting *State ex rel. Nixon v. Premium Standard Farms, Inc.,* 100 S.W.3d 157, 161 (Mo.App.2003)). "Courts apply certain guidelines to interpretation, sometimes called rules or canons of statutory construction, when the meaning is unclear or there is more than one possible interpretation." *State v. Rowe,* 63 S.W.3d 647, 649 (Mo. banc 2002). When the words are clear, however, there is nothing to construe beyond applying the plain meaning of the law. *Id.* (citing *State ex rel. Mo. Pac. R.R. v. Koehr,* 853 S.W.2d 925, 926 (Mo. banc 1993)).

▮ "In interpreting a statute, we are to ascertain the intent of the legislature." *State v. Harris,* 156 S.W.3d 817, 822 (Mo. App.2005). Such intent, however, can only be derived from the words of the statute itself. *Rowe,* 63 S.W.3d at 650 (citing *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998)). "Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning." *Rowe,* 63 S.W.3d at 650 (citing *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993)). "A court will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Akins v. Dir. of Revenue,* 303 S.W.3d 563, 565 (Mo. banc 2010).

▮ The plain meaning of words that are not defined in the statute being interpreted is usually derived from the dictionary. *Harris,* 156 S.W.3d at 823. A credit card is "[a]n identification card used to obtain items on credit, usu. on a revolving basis." BLACK'S LAW DICTIONARY 424 (9th ed.2009). *See also* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 473 (2nd ed.2001) ("a card that identifies a person as entitled to have food, merchandise, services, etc., billed on a charge account."). Neither the statutory language nor the ordinary meaning of credit card require that the account be active for the identification card to be considered a credit card. Thus, the victim's testimony that the card was a credit card and that she had not given Defendant permission to have it was sufficient to support his conviction for stealing a credit card.

▮ The plain meaning of the statute also disposes of Defendant's arguments that the trial court misunderstood which type of stealing Defendant had been charged with and that for the theft to be a felony the card must have intrinsic value.

In rejecting Defendant's argument in support of his motion for acquittal, the trial judge considered the fact that a stolen credit card could be dangerous even if it was not active because a person could use it to fraudulently obtain money or services. From this discussion, Defendant argues that the reasoning was incorrect because he was charged with stealing without consent, not stealing by deceit. Defendant's argument misconstrues the nature of the trial judge's remarks. The trial judge was talking about the legislative policy behind the lack of a dollar amount connected with section 570.030.3(3)(c), not about the particular facts of this case. Nothing in the stealing statute requires that the credit card be used in order for the theft to be classified as a felony. Rather, the statute merely requires that the property taken have been a "credit card." Section 570.030.3(3)(c). Defendant's argument that the card must have intrinsic value is also contrary to the plain meaning of the statute. The fact that the legislature has made stealing a felony if it involves a certain value of property does not prohibit the legislature from also determining that certain thefts are worthy of greater punishment even if the property itself has little or no intrinsic value. The plain language of the statute does not require that the credit card have any value, and we "may not engraft upon the statute provisions which do not appear in explicit words or by implication from othe[r] words in the statute." *State v. Collins*, 328 S.W.3d 705, 709 n. 6 (Mo. banc 2011).

Defendant also supports his argument by pointing to the fact that the victim "testified that she thought the account had been closed before the break-in." This argument ignores our standard of review by relying on an inference that is contrary to the verdict. The victim's actual testimony was that she did not think the American Express card was an active card. La-

ter, she emphasized that she did not want to positively testify that the card was or was not activated because she did not remember and was not sure. This testimony does not establish that the account had been closed, as an account may be open even if the card has not been activated. To infer that the account had been closed prior to the theft from the victim's testimony that she was not sure if the card was active is pure speculation that is contrary to the verdict.

Furthermore, there is evidence to support the opposite conclusion. After saying that she thought the card was not active, the victim stated that she had left the credit cards at home so they would not get lost while she was on vacation. After the theft, she called the company and had the card cancelled. These actions—steps an ordinary and reasonable person would take to protect an open account—would not have been necessary if the account had been closed prior to the theft. Thus, the reasonable inference in the light most favorable to the verdict from these statements is that the card in the present case accessed an open account at the time of the theft.

Defendant's final argument rests on language in *State v. Clay*, 144 Wash.App. 894, 184 P.3d 674 (2008). In that case, the Washington Court of Appeals upheld a conviction for stealing an access device even though the victim had never received her card because the card in question could have been used once it had been activated. *Id.* at 677. From this, Defendant argues that his conviction cannot stand because the card could not have been used when it left the victim's possession. The first problem with this argument is that it relies on the assumption that the account had been closed prior to the theft. As discussed above, nothing in the evidence supports that assumption.

The second problem with this argument is that there are circumstances under which a credit card or credit device can be used to obtain services even if the account has been closed or the card is otherwise invalid. Several states with stealing statutes similar to Missouri's, including Washington, recognize this fact and do not require proof that the card is active or related to an open account to support a conviction for stealing a credit card. *See, e.g., State v. Schloredt,* 97 Wash.App. 789, 987 P.2d 647, 650 (1999); *State v. Hendking,* 91 Ohio App.3d 137, 631 N.E.2d 1108, 1110 (1993); *People v. Winfield,* 145 A.D.2d 449, 450, 535 N.Y.S.2d 619 (1988).

The victim identified the stolen item as her "American Express card" and as one of the "credit cards" she had left at home when she went on vacation. She further stated that she had not given permission for Defendant to possess that card. This was sufficient evidence from which the jury could find beyond a reasonable doubt all the elements necessary for a conviction for the class C felony of stealing a credit card. *See State v. Passley,* 389 S.W.3d 180 (Mo.App.2012). Point II is denied.

### Conclusion

Defendant's points are without merit. The trial court's judgment is affirmed.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.