KURT S. ODENWALD, Judge.
I respectfully dissent with the majority’s holding that sufficient evidence was before the trial court to support a conviction of second-degree domestic assault. My difference from the majority opinion focuses on the evidence of choking, or, in my conclusion, the absence of such evidence, even in light of our limited standard of review.
The majority correctly states our standard of review that when reviewing a claim based upon the sufficiency of the evidence, we view the evidence in the light most favorable to the State, State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc 2011) and accept as true all evidence and inferences favorable to the State and disregard all evidence and inferences to the contrary. State v. Page, 309 S.W.3d 368, 375 (Mo.App.E.D.2010).
The evidence introduced at trial is that Defendant Sutherland (“Sutherland”) held C.K. up against a wall by her neck and squeezed her neck. C.K. initially stated Sutherland tried to choke her, and subsequently answered “Uh-huh” when the prosecutor asked if “he was actually choking you at that point.” Despite Sutherland’s actions, C.K. testified on cross-examination that she could breathe. The majority concludes that a reasonable jury could have inferred from C.K.’s testimony that her breathing was made somewhat difficult by Sutherland’s actions even though she could breathe. My disagreement with the majority opinion is that C.K.’s testimony, which described Sutherland’s conduct and the consequence of that conduct on her ability to breathe, does not constitute choking, and therefore, cannot support a conviction for second-degree domestic assault.
*652 As noted by the majority, the term “choking” is not defined by statute. There is no definitive definition of choking in Missouri case law. Accordingly, our analysis is guided by the common definition of choking. “The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.” Howard v. City of Kansas City, 382 S.W.3d 772, 779 (Mo. banc 2011). The plain and ordinary meaning of an undefined word is derived from the dictionary. Id. at 780.
The majority refers to Webster’s Third New International Dictionary, which defines the verb “choke” as follows: “1: to make normal breathing difficult or impossible for (a person or animal) (1) by compressing the throat with strong external pressure ...” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 396 (1976). “Choking” is also defined as “producing the feeling of strangulation” [1] while the verb to “choke” means “to check normal breathing of by compressing or obstructing the trachea or by poisoning or adulterating available air.... ” MERRIAM-WEBSTER’S COLLEGIATE DICTIONARY 201 (10th ed.1995). In its brief, the State proposed that this Court utilize yet another definition of “choke” provided by the American-Heritage Dictionary of the English Language. That dictionary defines to “choke” as “to interfere with the respiration of by compression or obstruction of the larynx or trachea.” THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 337 (3d ed.1992). Each of these definitions is similar in that each requires interference with breathing by compressing the throat.
Despite C.K.’s layman characterization of Sutherland’s conduct as “choking”, C.K’s specific testimony does not describe “choke” or “choking” under any of the definitions referenced above. Most of C.K’s trial testimony addressed Sutherland’s act of grabbing her neck and squeezing as opposed to the effect that conduct on her. During direct examination, the only testimony relating to the impact of Sutherland’s acts on C.K’s breathing is as follows:
[PROSECUTOR]: How did you feel when he was holding you up against the wall?
[WITNESS]: Scared.
[PROSECUTOR]: Were you able to breathe at that point?
[WITNESS]: Yeah, I was able to breathe. I mean, I didn’t lose consciousness, but ...
C.K. further described the Sutherland’s conduct and effect of that conduct on her breathing during her cross-examination. C.K. testified as follows:
[DEFENSE COUNSEL]: All right. At some point he put his hand around your neck. That’s your testimony, right?
[WITNESS]: That’s correct.
[DEFENSE COUNSEL]: Okay. Now, while he had his hand around your neck, could you breathe?
[WITNESS]: Yes.
[DEFENSE COUNSEL]: And you never felt light-headed?
[WITNESS]: That’s correct.
*653 This combined testimony is the only evidence in the record addressing C.K’s breathing either at the time or after Sutherland grabbed her neck and squeezed. Sutherland’s conduct is not determinative of whether choking occurred. The effect of that conduct on C.K’s breathing is what determines the outcome of this appeal. I remain unconvinced that any reasonable juror could infer from C.K.’s testimony that Sutherland’s conduct made her breathing difficult or interfered in any way with her breathing.
I agree with the majority that a person’s breathing need not be completely obstructed to constitute choking. However, the evidence before the jury, even when construing all inferences favorable to the State, lacked sufficient facts from which the jury reasonably could have found that C.K’s breathing was made difficult in any manner whatsoever. C.K. testified that she could breathe. C.K. did not limit or condition this testimony. The record is void of any testimony or other evidence to support a factual finding or reasonable inference that Sutherland’s conduct made C.K’s breathing difficult or interfered in any way with C.K’s breathing. The record reflects that Sutherland grabbed C.K’s throat and squeezed. The majority holds that a reasonable juror could have inferred Defendant made C.K’s normal breathing difficult by compressing the throat with strong external pressure. The failing of that analysis and conclusion is C.K.’s own testimony, which did not indicate any limitation on her ability to breathe consistent with any of the definitions of choking referenced in the majority opinion or briefs filed in this appeal.
Had C.K. not testified regarding her ability to breathe, I would agree with the majority that a reasonable jury could infer that C.K. experienced some difficulty breathing as a natural result of Sutherland grabbing her neck and squeezing. But C.K. did testify about her breathing. C.K. testified that she could breathe despite Sutherland’s conduct. C.K. testified that she never felt lightheaded as a result of Sutherland’s actions. I do not suggest that C.K. was required to testify that she could not breathe at all, felt as if she was losing consciousness, felt light-headed, or experienced similar physical responses to Sutherland’s act of grabbing her throat in order to prove she was choked. However, even using the majority opinion’s definition of choking, the evidence must demonstrate some modicum of interference with C.K.’s breathing to constitute choking and support a conviction of second-degree domestic assault. C.K. was asked if she could breathe and she said yes. C.K. testified affirmatively that she could breathe and offered no testimony from which a jury reasonably could infer that Sutherland’s act of grabbing her neck and squeezing made her breathing difficult. Quite simply, C.K’s layman’s characterization of Sutherland’s conduct as “choking” does not meet the legal requirements of choking under Missouri law.
Absent evidence that Sutherland’s conduct made C.K’s breathing difficult, the charge of second-degree domestic assault cannot stand. For that reason, I would reverse the conviction for second-degree domestic assault and remand this matter to the trial court for trial on the lesser included charge of domestic assault in the third degree.

. "Strangulation” is "the action or process of strangling or strangulating.” MERRIAM-WEBSTER’S COLLEGIATE DICTIONARY 1162 (10th ed.1995). To "strangle” means "to choke to death by compressing the throat with something (as a hand or rope)" or "to obstruct seriously or fatally the normal breathing of.” Id.